**HYDROGEN TECHNOLOGY CORP., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 85–2073 Mc.**

United States District Court,
D. Massachusetts.

March 26, 1987.

Marc A. Comras, Comras & Jackman, P.C., Boston, Mass., for plaintiff.

Betsy G. Roberti, Day, Berry & Howard, Boston, Mass., for intervening plaintiff Dr. Harold T. Couch.

Martha B. Sosman, Asst. U.S. Atty., for defendant.

## MEMORANDUM AND ORDER on CROSS MOTIONS FOR SUMMARY JUDGMENT

McNAUGHT, District Judge.

This action came to be heard on cross motions for summary judgment. This is an action under the Federal Tort Claims Act, 28 U.S.C. §§ 2671–2680 wherein the alleged owner of a "hydrogen generator" seeks damages for trespass to or negligent, reckless mishandling of the object in the course of a criminal investigation. It is claimed that the device was rendered useless and irreparable when, at the FBI Laboratory in the District of Columbia, it was dismantled in the course of examination. Plaintiff and defendant agree that there is no dispute over the material facts. They each assert that on those facts they are entitled to judgment on liability. If plaintiff is right, an assessment of damages should follow. If the government is correct, the case is over.

Sixty-one (61) joint exhibits were submitted by the parties to the court at the hearing on these motions, preceded by a "table of contents" type of description of each of them. The trip through this wonderland of paper has been less than fascinating. I am satisfied now that if the

parties had tried, they could have assembled an agreed statement of undisputed facts and saved the Court a great deal of time and effort. The statement of facts that follows is taken partly from the plaintiff's submissions and partly from the government's.

One Ambrose Hartnett interested a number of people in investing a total of $415,000 to develop the generator in question. A prototype was developed and demonstrated to the group here in Massachusetts. On March 22, 1982 the investors agreed that one of them, a Howard Scherer, could take it to Purdue University for study. Seven of the investors were from Indiana. In the meantime, in 1981, the FBI initiated an investigation into possible wire fraud violations by Mr. Hartnett. Scherer did not deliver the unit to Purdue University. He kept it and he then filed two actions at law in the United States District Court seeking a judgment to the effect that he was the sole owner of the unit in one of them, and asking for return of his investment ($25,000) by reason of fraud in the other.

On May 25, 1983 Scherer was ordered by a federal judge to return the unit to the defendants within 15 days. He did not do so. His cases were dismissed the following month. The United States Attorney for the Northern District of Indiana declined to prosecute for "insufficient credible evidence", "parallel lawsuits" in Indiana and Boston in the Federal Courts wherein the issue of ownership, the viability of the device and the return of investors' funds might be resolved. He also cited the age and poor health of Mr. Hartnett as a reason for his action.

In the fall of 1983 one Les Stoller, an Indiana resident, and an investor who knew where the generator was stored, turned it over to the F.B.I. The Indiana office of the Bureau sent the machine to the Laboratory for an analysis of its composition and capabilities. A Doctor Fred Gornick, a professor from the University of Maryland, issued a report dated May 29, 1984. Plaintiff, in its submission, emphasizes those portions of the report favoring its view of

this dispute, and the government emphasizes the conclusion of Dr. Gornick that the machine was nothing but an elaborate device for carrying out a simple chemical reaction that could be done as well in a "heated pipe full of iron briquets". What really matters is that damage was done by reason of the dismantling and examination. The dismantling and examination were ordered because the F.B.I. was carying out a criminal investigation, and despite the characterization of Document 51 by plaintiff's counsel as proof that there was "no credible evidence of fraud" (a phrase taken from the letter of the United States Attorney for the Northern District of Indiana) there is much more in the joint exhibits to justify the continued investigation by the Agency. Exhibits 4, 7, 14, 17, 19, 20, 26 and 29.

The government contends that two exceptions to the Federal Tort Claims Act come into play, 28 U.S.C. § 2680(a) and § 2680(c). The government also argues that if there was a trespass to plaintiff's property, the trespass was, at common law, privileged.

Section 2680(c) was dealt with first in the government's brief and in the plaintiff's argument; hence I shall deal with it before coming to the "discretionary function" exception of Section 2680(a).

■ The Tort Claims Act does not apply to "any claim in respect of the assessment or collection of any tax or customs duty, or the detention of any goods or merchandise by any officer of customs or excise *or any other law enforcement officer.*" (Emphasis supplied.) The United States asserts that the Supreme Court has interpreted this section broadly, holding that *any* claim arising out of the detention of goods, including negligent handling or storage of detained property is barred. Defendant cites *Kosak v. United States,* 465 U.S. 848, 104 S.Ct. 1519, 79 L.Ed.2d 860 (1984), and *Bielass v. New England Safe System, Inc.,* 617 F.Supp. 682 (D.Mass.1985) in support. These cases, however, involved goods left with or detained by the Customs Service. The decision in *Formula One Motors, Ltd. v. United States,* 777 F.2d 822 (2d Cir.,

1985) was concerned with a vehicle seized by DEA agents, and effectively destroyed by disassembly in a search for narcotics. Circuit Judge Newman, in the opinion, recognizes that one might interpret the exception to mean that "other law enforcement officers" are covered "only when their actions are in aid of customs or excise functions of the Government", but calls attention to the fact that "several circuits have ruled, with scant discussion, that section 2680(c) applies to detentions beyond the context of customs duties and taxes..." At page 823. He then recognized the kinship of the activity by the DEA agents to the customs function, noting that the car had been shipped from abroad and was still in its shipping container. It is clear to me that the *Formula One Motors* decision does not cover the fact situation in the case at bar. Circuit Judge Oakes, concurring, wrote that if there were no nexus between customs activity and the activity complained of, he would hold that section 2680(c) did not bar recovery. That view makes sense to me, and in the absence of a definitive guideline in this circuit, I too am of the opinion that "those cases applying the exception to law enforcement officers acting out of the excise/customs context....to be wrongly decided." At page 825.

Is this claim barred by 28 U.S.C. § 2680(a)? This subsection provides that the Act does not apply to any claim "based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, ... or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." I have stated above that I agree with the government's contention that there is no question but that the taking and dismantling of this object was a part of the investigation into possible wire fraud in which investors may have been bilked. That conclusion, however, does not conclude the inquiry. What was done upon acquisition of the machine was done *deliberately*, to see whether the unit was legit-

imate. Notwithstanding plaintiff's claim, this was not a negligent or careless act as negligence is defined in the Commonwealth of Massachusetts. (Plaintiff asserts that "Massachusetts negligence law" should control. "The law in the District of Columbia is essentially similar. .... There is no overriding interest in the application of the law of the District of Columbia. It is merely coincidental that the F.B.I.'s Laboratory is located there. The primary impact of the conduct alleged is felt in Massachusetts." We assume that Massachusetts law applies, or that, if District of Columbia law applies, there is no substantial difference in the two, since the point is not contested by defendant.) Plaintiff defines "negligence" as breach of a duty causing damage, and continues on: "The standard of care owed is that of a person of ordinary prudence exercising reasonable care under the circumstances". It is then contended that, while the government's decision to investigate may have been the exercise of a discretionary function, "further actions are not immunized". Somewhere, there has been a jump in logic.

■ One looks to the relationship, under Massachusetts law, of the defendant to the plaintiff. The question then becomes, considering the status of defendant (law enforcement agency) and that of the plaintiff (subject of investigation) what would the reasonable law enforcement agency have done under the circumstances? The answer, it seems to me, with respect to the suspected crime instrument, is that the reasonable law enforcement agency would subject it to tests. If it were a gun, test firing might take place. If it were the remnants of a poison and the nature of it was subject to question, it would be subjected to chemical tests, even if those tests resulted in its destruction. There was no "negligent" type of conduct here, in the sense of failure to exercise reasonable care under the circumstances. If anything, there was a deliberate act. In the light of this conclusion (applicable to Count I) Count II (based on alleged negligent failure to "exercise supervisory obligations to pre-

vent the negligent, careless or reckless destruction of the generator") must fall also.

Reference has been made, in the brief by plaintiff, to "Tort Law", a volume by Justice Joseph Nolan of the Supreme Judicial Court, one of the works in the Massachusetts Practice Series from West Publishing Company, as authority for the proposition that what was done by the F.B.I. to the generator constituted negligence. Justice Nolan writes, however, that "Negligence cannot be discussed in a vacuum." § 172. He gives illustrations, many from the Restatement, emphasizing the importance of the relationship of the actor to another (parent to child, landowner to trespassing child, one in charge of another who is helpless, etc.). A telling phrase appears in section 173 wherein he writes, concerning negligence: "It is *a want of diligence* (emphasis supplied) commensurate with the requirement of the duty at the moment imposed by law". A negligent act may, of course, be an intentional act in itself, but to constitute negligence, it must be characterized by a lack of diligence in the performance of duty—an act which creates an *unreasonable risk of harm.* "Liability is founded on unreasonable risk taking". At § 174. This governmental action was deliberate, subjecting plaintiff's property to testing. There was no "creation of a risk" —but a studied dismantling of the object.

If there be a similarity between this case and another, that other is *Porter v. United States*, 473 F.2d 1329 (5th Cir., 1973). In *Porter*, at page 1336: "We consider first the claim with regard to the damage, in the form of staining and discoloration, to some of the documents handled by the FBI. Properly framed, the question posed by her claim (the widow of Lee Harvey Oswald) is as follows: 'If the government had not taken the particular property on November 1, 1966, but instead had returned it to Mrs. Porter, would the government have been monetarily liable for such damage?' We think not. Under the circumstances of this case, we think that the sort of damage complained of does not of itself amount to an implied taking for which compensation would be constitutionally required. ... (T)he claimant's recourse, if any, must be

found in the Federal Tort Claims Act. Even so, the claim must fail. While reserving judgment as to the question whether an individual whose property has been negligently damaged by the FBI in the course of an investigation can recover under the Tort Claims Act, we think it evident at the very least that Mrs. Porter cannot ... *Absent, as here, any proof* or even allegation *that the damage was due to negligence,* it must be assumed that the agents of the FBI responsible for damaging the documents were properly carrying out their appointed functions". (Underlining by author.) If the conduct of the agents in the *Porter* case could not be characterized as "negligence", neither can the conduct of the F.B.I. in the case at bar. There is nothing to indicate that the F.B.I. here was doing anything other than carrying out its statutory duty under 28 U.S.C. § 533 with due care. The instant claim, therefore, is barred by the exception defined in 28 U.S.C. § 2680(a).

Finally, there is no evidence that the F.B.I. took any step that was unreasonable, unnecessary or excessive. The machine had to be taken apart to find out what made it "tick".

Plaintiff's motion for summary judgment is denied. Defendant's motion is allowed. Judgment for the defendant.