# United States Court of Appeals
## For the First Circuit

_____

No. 99-1977

CARMEN ROMAN; JAIME ECHEVARRIA;
CONJUGAL PARTNERSHIP, ECHEVARRIA-ROMAN;
JAIME ECHEVARRIA-ROMAN (MINOR);
YAIKA ALEXANDRA ECHEVARRIA-ROMAN (MINOR);
RAISA MICHELLE ECHEVARRIA-ROMAN (MINOR);

Plaintiffs, Appellants,

v.

BRIAN KEITH TOWNSEND; ANTHONY SHOPE;
JOHN DOE; PETER ROE;
TOGO D. WEST, SECRETARY OF THE U.S. ARMY;

Defendants, Appellees.

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Pérez-Giménez, U.S. District Judge]

_____

Before

Stahl and Lynch, Circuit Judges,

and Gorton,* District Judge.

_____

Frank D. Inserni for appellants.
Fidel A. Sevillano-Del Río, Assistant United States Attorney, wit
States Attorney, was on brief, for appellees.

_____

August 23, 2000

_____

_____
*  Of the District of Massachusetts, sitting by designation.

GORTON, U.S. District Judge. Plaintiffs-appellants challenge the district court's dismissal of their amended complaint. After examining the record and the law, we affirm.

## I. Background and Prior Proceedings

On November 29, 1994, Carmen Roman ("Roman"), with a car borrowed from a friend, proceeded to pick up her child from the Antilles Intermediate School located inside Fort Buchanan, a United States Army base. Because Roman and her husband, Jaime Echevarria ("Echevarria"), are employed by the federal government, they are able to send their children to Antilles School free-of-charge.

Upon entering the base, Roman presented the military police officer, Brian Townsend ("Townsend") with identification. Because her driver's license had expired, Townsend detained Roman at the entrance. After Roman became upset, frustrated and vocal, Townsend arrested her for breach of the peace and took her to the military police station.

Anthony Shope ("Shope"), Townsend's supervising officer, picked up Roman's daughter, who had been waiting outside the school, told her that her mother had been arrested and took her to the police station where her mother was detained. Roman alleges that while

2

detained at the police station and in her daughter's presence, she was verbally, physically and emotionally abused by Townsend and Shope. Echevarria came to pick up his wife and daughter but was not allowed to enter the police station. Roman was charged with a federal misdemeanor, of which she was later acquitted, and was banned from entering Fort Buchanan.

On November 28, 1995, one day short of one year after the incident, Roman submitted a Form 95 Administrative Claim ("the Administrative Claim") to the Claims Division of the Office of the Staff Judge Advocate ("SJA") at Fort Buchanan seeking redress in the amount of $2,000,000. Attached to the claim was a six-page recital of the events which occurred on November 29, 1994 ("the Incident"). On May 17, 1996, the SJA mailed a letter to Roman notifying her that it had denied her claim and that if she was dissatisfied with that decision, she was entitled to file suit in a United States District Court no later than six months from that date.

On November 15, 1996, two days less than six months thereafter, plaintiffs filed an action in the United States District Court for the District of Puerto Rico against the two military policemen involved in the Incident. The complaint also named as defendants the unknown supervisors of the Policemen, identified in the

3

caption as John Doe and Peter Roe.[1]  Plaintiffs alleged sexual harassment, intentional tort claims for breach of peace, assault and battery and infliction of emotional distress upon Roman and her family and gross negligence by the supervising officers.  Plaintiffs brought their action pursuant to 42 U.S.C. §§ 1983 and 1988, the Fourth, Fifth and Fourteenth Amendments to the United States Constitution and the Constitution and laws of the Commonwealth of Puerto Rico.[2]

More than one year later, on December 9, 1997, plaintiffs filed an amended complaint adding Togo D. West, Secretary of the Army ("the Secretary"), as a defendant and, for the first time, asserted jurisdiction under the Federal Tort Claims Act, 28 U.S.C. §§2671 et seq. ("the FTCA").  Plaintiffs also, for the first time, asserted claims pursuant to Title VII of the Civil Rights Act, 42 U.S.C. § 1981, as well as P.R. Laws Ann. tit. 31, §5141 and tit. 29, §155 et seq. and for false imprisonment and arrest, abuse of process and malicious prosecution.

---

[1] In the body of the complaint, plaintiffs list John Doe and Richard Roe as the supervisors and later include Peter Roe as an additional supervisor of the "three named defendants."  It is unclear whether the plaintiffs intended to sue two or three unnamed defendants.  Although our disposition of the case would remain the same in any event, we read the complaint to include two unnamed supervisors as defendants and proceed to refer to them as "John Doe" and "Peter Roe".

[2] The district court correctly construed plaintiffs' §1983 claim as a Bivens claim because the defendants were federal, not state, agents. See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).

4

A copy of the summons, the amended complaint and discovery requests were served upon the Secretary in February 1998 via certified return receipt mail to the Chief of Army Litigation in Arlington, Virginia and the Assistant Judge Advocate General's Office in the Pentagon.  Defendant Townsend was served on March 18, 1998.  His default was entered on April 28, 1998, but default judgment was never applied for or entered against him and he was treated as a party-defendant for the duration of the case.  Shope was served on July 6, 1998 and the United States Attorney filed an appearance on his behalf.

On August 18, 1998, the United States filed a notice of substitution and certificate by the United States Attorney that the individual defendants were acting within the scope of their federal employment in connection with the Incident.  That notice informed the district court that the United States was substituted for  Townsend, Shope, John Doe and Peter Roe pursuant to the Federal Employees Liability Reform and Tort Compensation Act of 1988 ("the Westfall Act"), Pub. L. No. 100-694, 102 Stat. 4564 (1988).[3]

---

[3] The FTCA, as amended by the Westfall Act, provides that "[u]pon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon [a common law tort against a federal employee] in a United States district court shall be deemed an action against the United States ... and the United States shall be substituted as the party defendant." 28 U.S.C. §2679(d).

Along with that notice, the United States and the individual co-defendants filed a motion to dismiss the amended complaint as to all plaintiffs except Roman. They argued that because only Roman filed the Administrative Claim, the other plaintiffs failed to exhaust their administrative remedies as required under the FTCA. That motion was not decided but was rendered moot by the district court's disposition of a subsequent motion of the United States to dismiss and/or for summary judgment on the grounds that plaintiffs' FTCA claim failed to satisfy the requirements of that statute and that their Bivens claim was time-barred.

On May 4, 1999, the district court dismissed the FTCA claim because it found that the plaintiffs had failed 1) to bring the action within six months of the denial of their Administrative Claim and 2) to name the United States as the proper party defendant.[4] The district court agreed with the United States that plaintiffs' Bivens claim was time-barred because more than one year had elapsed between the Incident on November 29, 1994 and the filing of plaintiffs' complaint on November 15, 1996, and, therefore, dismissed that claim as well.

Plaintiffs' motion to reconsider the dismissal order was denied by the district court by endorsement on June 30, 1999. We

_____

[4] Although the district court purportedly dismissed the FTCA claim on both grounds, the plaintiffs did, in fact, file their complaint within the six-month period. They failed, however, at that or any subsequent time, to assert a tort claim against the United States.

6

review plaintiffs' appeal from the district court's order of dismissal de novo.  See Duckworth v. Pratt & Whitney, Inc., 152 F.3d 1, 4 (1st Cir. 1998).

## II. FTCA Claim

The FTCA waives the sovereign immunity of the United States with respect to tort claims, see 28 U.S.C. §2674, and provides the exclusive remedy to compensate for a federal employee's tortious acts committed within his or her scope of employment. See 28 U.S.C. §2679. In order to bring a tort claim against the United States under the FTCA, a claimant must first file an Administrative Claim with the appropriate federal agency within two years of the accrual of the claim and then file a tort claim against the United States within six months after a denial of (or failure to act upon) that claim by the administrative agency. See 28 U.S.C. §§ 2401(b), 2675.  In addition, the FTCA requires that the named defendant in an FTCA action be the United States and only the United States. 28 U.S.C. §§ 1346(b), 2674, 2679(a).

In this case, the plaintiffs never timely named the United States as the defendant in an FTCA suit and that fact alone is fatal to their cause.  Roman's Administrative Claim was denied on May 17, 1996 and thus plaintiffs had until November 17, 1996 to initiate a tort claim against the United States.  They filed a complaint two days before the deadline but only asserted tort claims against the military

7

policemen involved in the Incident and their supervisors.  The plaintiffs did not assert an FTCA claim nor did they name the United States as the defendant.  Although the United States became a party to this action when it filed a notice of substitution on August 18, 1998, it did so well after the six-month limitation period expired.

Appellants argue that by substituting itself for the individual defendants, the United States voluntarily submitted to the jurisdiction of the district court, thereby waiving any objection to the plaintiffs' initial failure to commence the suit under the FTCA or to name the proper party defendant.  It is clear, however, that the requirement that a plaintiff sue the United States within the period of limitations in an action brought under the FTCA is jurisdictional in nature and thus non-waivable. See Allgeier v. United States, 909 F.2d 869, 871 (6th Cir. 1990)  ("Failure to name the United States as defendant in an FTCA suit results in a fatal lack of jurisdiction.") (citations omitted); see also Wolf v. Reliance Std. Life Ins. Co., 71 F.3d 444, 448 (1st Cir. 1995) (stating that lack of subject matter jurisdiction is a non-waivable defense) (citation omitted).

An action against a federal employee is "deemed" to be a FTCA action against the United States once it substitutes itself for the employee, see 28 U.S.C. §2679(d), but that transformation does not excuse plaintiffs' failure to bring a tort claim against the United States within six months of the denial of Roman's Administrative Claim.

The limitations and exceptions of the FTCA apply to an action after the United States substitutes itself for the individual defendants, see 28 U.S.C. §2679(d)(4), including the requirement that a tort claim against the United States be filed within six months of a denial of an Administrative Claim filed with a federal agency. See 28 U.S.C. §2401(b).

The purpose of the Westfall Act, which permits the United States to substitute itself for a federal employee, is to protect that employee from personal tort liability yet provide the injured person with a remedy for such conduct. See Pub. L. No. 100-694, §2(b). The Westfall Act was not intended to revive the claim of a neglectful plaintiff who attempts to bring an FTCA claim but utterly fails to comply with the clear (and strict) procedural requirements of that statute.

Thus, the district court did not have jurisdiction to hear plaintiffs' claim unless the United States' substitution in 1998 related back to the date of the original suit in 1996. That substitution had the same legal effect as an amendment to the complaint adding the United States as a party, except that here the United States, rather than the plaintiffs, was the movant. See Ezenwa v. Gallen, 906 F.Supp. 978, 985 (M.D.Pa. 1995). An amendment adding (or changing) a party against whom a claim is asserted relates back to the date of the original pleading only if, inter alia, the added party had

sufficient notice of the institution of the action. <u>See</u> Fed.R.Civ.P. 15(c)(3).[5] When the party to be added (or substituted) is the United States, it is deemed to have been properly notified (and the claim to relate back under Rule 15(c)) where, within the period provided by Fed.R.Civ.P. 4(m) for service of the summons and complaint, i.e., 120 days after the filing of the original complaint, delivery or mailing of process has been made to either 1) the United States Attorney or 2) the Attorney General of the United States. <u>See</u> Fed.R.Civ.P. 15(c).

Plaintiffs mailed process to the Chief of Army Litigation and the Assistant Judge Advocate General's Office on February 2, 1998. Plaintiffs claim that, during that same month, they also sent to Assistant United States Attorney, Fidel Sevillano ("AUSA Sevillano"), a copy of the amended complaint, the summons for the Secretary of the Army and a set of discovery requests. There is no proof in the record, however, of any such service. In fact, in the notice of substitution submitted by AUSA Sevillano on behalf of the United States, it is noted that "the United States of America has still to be served with process pursuant to F.R.C.P. 4i(1)."

Even if 1) service had been made upon AUSA Sevillano in February 1998 or 2) service on the Secretary of the Army provided sufficient notice to the United States, such service of process was

---

[5] The purpose of Fed.R.Civ.P. 15(c)(3) is to correct a formal defect such as a misnomer or misidentification. Fed.R.Civ.P. 15(c) Advisory Committee Notes.

10

made well beyond the time limit required under Fed.R.Civ.P. 4(m). The United States received insufficient notice for relation back purposes under Fed.R.Civ.P. 15(c)(3) and any claim against it, even by way of substitution, did not relate back to the date that the original complaint was filed. The district court did not, therefore, acquire jurisdiction over plaintiffs' FTCA claim nor did it err in dismissing that claim.

### III. <u>Bivens</u> Claim

Appellants do not dispute the settled proposition that their <u>Bivens</u> claim against Townsend, Shope and two unknown Army agents is subject to a one-year statute of limitations period. Rather, they argue that the district court erred in dismissing their claim because the statute of limitations, which would have barred their suit from being brought after November 29, 1995, was tolled under the extrajudicial claim provision of the Puerto Rican tolling statute. <u>See</u> P.R. Laws Ann. tit. 31, §5303 (providing that the "[p]rescription of actions is interrupted by their institution before the courts, by extrajudicial claim of the creditor, and by any act of acknowledgment of the debt by the debtor"). Specifically, Appellants claim that the statute of limitations period was tolled when Echevarria personally delivered the Administrative Claim to the SJA and mailed the same to the individual defendants on November 28, 1995.

We recently outlined the characteristics of an extrajudicial

11

claim as defined by the law of the Commonwealth of Puerto Rico in

Andino-Pastrana v. Municipio de San Juan, 215 F.3d 179 (1st Cir. 2000).

In that case, we noted that an "extrajudicial claim," is one in which

there is "a certain identity between the action instituted and the

action tolled." Id. at 180-81 (quoting Cintron v. Commonwealth of

Puerto Rico, No. CE-88-761, slip. op., translation, at 8 (P.R. Supreme

Court Dec. 7, 1990)).  We specified that:

> Even substantial overlap between the putative
> extrajudicial claim and the subsequent lawsuit
> is not enough; rather, there must be a precise
> and specific identity between the two.

Id. at 181 (internal quotation marks and citations omitted).

Here, the Administrative Claim does not share a precise and

specific identity with plaintiffs' lawsuit.  In their complaint, the

several plaintiffs alleged that defendants violated rights granted to

them under the Fourth, Fifth, Ninth and Fourteenth Amendments to the

United States Constitution, the Constitution and laws of the

Commonwealth of Puerto Rico and 42 U.S.C. §§ 1983 and 1988.  In her

individual Administrative Claim, a detailed, six-page recital of the

Incident, Roman fails to assert any legal claim and makes no mention of

any alleged violation of constitutional rights or statutory provisions.

Due to the clear absence of a precise and specific identity

between the Administrative Claim and plaintiffs' lawsuit, the former

cannot be characterized as an extrajudicial claim and thus did not toll

the statute of limitations. The district court did not err in dismissing Appellants' <u>Bivens</u> claim as time-barred.

### IV. Conclusion

For the foregoing reasons, the district court's order of dismissal is **<u>affirmed</u>**.