**Vincent Michael MARINO, a/k/a Vincent Michael Portalla, Plaintiff**

v.

**John GAMMEL, FBI Agent, Damien Farley, DEA Agent, Anthony Roberto, DEA Agent, Vincent Kelly, DEA Agent, Norman Peterson, DEA Agent, Joseph Desmond, DEA Agent, Michael Cuniff, DEA Agent, James Soiles, DEA, Agent, Thomas Quigley, Massachusetts State Police, and John and Jane Does 1–20, Defendants**

**No. CIV.A. 01–10116–REK.**

United States District Court, D. Massachusetts.

March 15, 2002.

Vincent Michael Marino, Atlanta, GA, for Plaintiff.

Anita Johnson, United States Attorney's Office, Boston, MA, Law Office of Emily Sample, Cambridge, MA, Marini Torres–Benson, Office of the Attorney General, Boston, MA, for Defendants.

Memorandum and Order

KEETON, District Judge.

## I. Pending Matters

Pending for decision are the matters associated with the following filings:

(1) Federal Defendants' Motion to Dismiss (Docket No. 21, filed July 10, 2001), with accompanying memorandum in support (Docket No. 22, filed July 10, 2001);

(2) Thomas Quigley's Motion to Dismiss or for Judgment on the Pleadings (Docket No. 77, filed November 7, 2001), with accompanying memorandum in support (Docket No. 18, filed June 12, 2001);

(3) Plaintiff's Response in Opposition to Motion to Dismiss (Docket No. 50, filed November 2, 2001);

(4) Plaintiff's Motion for Disclosure and Production of Newly Discovered Documents Pursuant to F.R.C.P. Rule 26 and Rule 34 (Docket No. 53, filed December 3, 2001);

(5) Plaintiff's Motion for Disclosure and Production of Newly Discovered Documents Pursuant to F.R.C.P. Rule 26 and Rule 34 (Docket No. 56, filed December 6, 2001);

(6) Plaintiff's Motion to Clarify Medical Term Artifact (Docket No. 57, filed December 20, 2001);

(7) Plaintiff's Motion to Offer Caselaw to Prohibit Defense Attorneys from Protection of Defendants who Continue to Conspire Together in Furtherance of Conspiracy and Conspiracy of Silence to Cover Up Discovery (Docket No. 59, filed January 7, 2002);

(8) Plaintiff's Notice via Sharing an Attorney with Original Defendants and Also via Identify of Interest with Originally Named Defendants (Docket No. 60, filed January 7, 2002);

(9) Plaintiff's Motion of Disclosure and Production of Newly Discovered Documents re: United States Patent Number: 5,629,678 of Human Implants of Tracking Devices and Other State of the Art Capabilities, All Being Disclosed Pursuant to Fed.R.Civ.P. Rule 26 and Rule 34 (Docket No. 61, filed January 7, 2002);

(10) Plaintiff's Response in Opposition to Motion to Dismiss (Docket No. 64, filed January 10, 2002);

(11) Plaintiff's Motion to Clarify Medical Term Artifact (Docket No. 62, filed January 10, 2002);

(12) Defendants' Reply to Marino's Opposition to Dismissal (Docket No. 71, filed January 24, 2002); and

(13) Federal Defendants' Motion to Dismiss (Docket No. 72, filed February 7, 2002), with accompanying memorandum in support (Docket No. 73, filed February 7, 2002);

(14) Plaintiff's Additional Memorandum of Law in Support of Motion to Dismiss (Docket No. 75, filed February 19, 2002); and

(15) Plaintiff's Motion of Newly Discovered Evidence Offered Pursuant to Fed.R.Civ.P. Rule 26 and Rule 34 (Docket No. 76, filed February 19, 2002).

## II. Facts Alleged in the Complaint

The state and federal officials named as defendants in this case have all moved for dismissal pursuant to various subsections of Rule 12 of the Federal Rules of Civil Procedure. I assume all well-pleaded facts are as alleged in the complaint, and draw all reasonable inferences in favor of the plaintiff. *See Washington Legal Foundation v. Massachusetts Bar Foundation*, 993 F.2d 962, 971 (1st Cir.1993).

The facts, as recited in the Complaint, are as follows:

12. On or about the 24th day of November 1996, at approximately 1:30 a.m. The Plaintiff was admitted, through the Emergency room, at Massachusetts General Hospital (Massachusetts general Hospital) with a gunshot wound to his lower back buttocks area.

13. Plaintiff was transported to Massachusetts General Hospital by the Med Trans. Ambulance service.

14. Plaintiff was initially examined at approximately 2:00 a.m. by attending Trauma Physician *RALPH LOUNSBURRY WARREN, M.D. Surgeon*.

15. *DOCTOR Warren* directed, and caused to be carried out, numerous x-rays, MRI's CT–Scans, and vari-

ous other tests to determine damage to internal organs and ascertain location of projectile.

16. Upon completing a battery of tests, Plaintiff was transferred for surgery to undergo surgery to extricate projectile and conduct a Laprascopic Exploration procedure.

17. Surgical preparation began on Plaintiff at approximately 7:00 a.m. on November 24, 1996.

18. General anesthesia was delivered and [unconsciousness] [sic] inducted in Plaintiff at approximately 8:10 a.m.

19. During Plaintiff's surgery, an unknown law enforcement agent *John Doe* or agents were in the operating room during Plaintiff's surgery to supervise the removal of a bullet (projectile) from Plaintiff.

20. Once projectile was extracted from Plaintiff, it was turned over to Defendant Doe One, Law Enforcement Agent(s).

21. At approximately 10:00 a.m., Plaintiff was taken from surgery to Massachusetts General Hospital Recovery/Intensive Care Unit.

22. Between the hours of 10:00 and 11:00 a.m., Plaintiff was transferred from the Recovery/Intensive Care Unit to a general residence area where Plaintiff was assigned a two (2) person room.

23. Once Plaintiff regained consciousness and his cognitive skills returned, he noticed that his right leg had been shaved.

24. Plaintiff was advised by the attending nurse [Name Unknown] [sic] that the Law Enforcement ordered specimens taken from Plaintiff which accounted for his shaven leg.

25. On or about the 24th day of November, 1996, between the hours of approximately 12:00 p.m. and 3:00 p.m., Plaintiff was interviewed by Massachusetts General Hospital staff regarding his financial status and ability to pay incurred hospital bills.

26. Shortly after being interviewed by Massachusetts General Hospital staff, as stated in paragraph number twenty (25)[sic] above, Plaintiff was advised by Massachusetts General Hospital personnel that the Plaintiff was being discharged from the hospital due to Plaintiff's inability pay [sic] medical costs.

27. Plaintiff was discharged from Massachusetts General Hospital. On November 25, 1996, at approximately 2:41 p.m.

28. At approximately 3:00 p.m. Plaintiff was picked up at Massachusetts General Hospital by family and friends.

29. On or about the 27th day of November 1996, at approximately 9:00 p.m. Plaintiff was again admitted at the Emergency Room of Massachusetts General Hospital suffering from Abdominal Infection and fever due to the previously incurred gunshot wound.

30. Upon arrival at Massachusetts General Hospital, Plaintiff was examined by attending Trauma Physician and a wound swab and blood cultures were conducted.

31. Plaintiff, was subsequently prescribed medication by Massachusetts General Hospital doctor(s), which included medication to combat infection and control pain.

32. Plaintiff left Massachusetts General Hospital after being seen by the medical staff and prescribed medication.

33. On or about the 28th day of November 1996, at approximately 12:32 a.m. Plaintiff was admitted for a 3rd time at the Massachusetts General Hospital Emergency Room, suffering from severe Abdominal Infection and high fever.

34. Plaintiff was examined by attending trauma physician, *JONATHAN N. ADLER, M.D.*, who ordered, and caused to be carried out, X-rays of Plaintiff.

35. Plaintiff was also seen by and spoke with two (2) other medical staff from time to time. Those being:

*PATRICK JACKSON, M.D.* and *Doctor LUKE MORONE.*

36. Plaintiff was transferred to the Radiology Department at approximately 2:00 a.m. where Plaintiff was seen by Radiologists *MARK J. RIEUMONT, M.D.* and *SUSIE Y. KIM.*

37. Radiologists *RIEUMONT* and *KIM* conducted x-rays of Plaintiff, the results of which were received by Plaintiff, through Collateral Litigation, and showed the following:
 (A). No definite Pneumonia.
 (B). On the lateral view, there is a "linear opacity" in the abdomen which most likely represents and "artifact".

38. Upon Completion of x-rays, the Plaintiff left Massachusetts General Hospital at approximately 3:00 a.m. on November 28, 1996.

39. On or about the 15th day of December, 1996, Plaintiff and a companion (Charles McConnell), were at the Logan International Airport ("L.I.A."), East Boston Massachusetts.

40. At approximately 10:00 a.m. while exiting the Logan International Airport, the Plaintiff was confronted by several gun wielding individuals, claiming to be law enforcement agents.

41. Plaintiff was forced to lie down where he was searched, handcuffed and placed into custody by these agents.

42. Defendants *GAMMEL, FARLEY, ROBERTO, KELLY, PETERSON, DESMOND, CUNIFF, SOILES, QUIGLEY* and several *JOHN DOES AND JANE DOES*, took part in the arrest of Plaintiff stated in paragraphs number forty (40) and forty-one (41) above.

43. While in the custody of agents, Plaintiff was approached by Defendant *ROBERTO*, who attempted to gain Plaintiff's authorization and signature on a document.

44. The document stated in paragraph forty-three (43) above was purporting to be an "authorization" for the surgical removal of an electronic device from Plaintiff's body.

45. Defendant *ROBERTO*, informed Plaintiff, that Plaintiff had been implanted with an "a microchip tracking device" and law enforcement (Drug Enforcement Agency/Federal Bureau Investigation) had been tracing Plaintiff since on or about November 25, 1996.

46. Defendant *ROBERTO*, further stated to Plaintiff that it was on "on loan" to Drug Enforcement Agency from the Central Intelligence Agency (C.I.A.) and was a sophisticated state of the art piece of equipment, cost a lot of money. Must be returned to the CIA.

47. Defendant *ROBERTO*, assured Plaintiff that he (Plaintiff) would be released on bail if Plaintiff would

sign documents and consent to surgical removal of device.

48. Plaintiff refused to sign the consent forms. Defendant **DESMOND** stated "Nobody will ever believe we did this".

49. Plaintiff was transported from Logan International Airport to the Drug Enforcement Agency's New England Field Division Office (Field Office) in Boston, Massachusetts.

50. While being transported from the Logan International Airport to the field office, Defendant's **FARLEY,** and **QUIGLEY,** continued to entice Plaintiff to consent to the surgical removal of the device.

51. Upon arrival at the Field Office, Defendant **FARLEY,** directed Plaintiff's attention to an office door within the Field Office building that displayed the name plate of one **"Dr. STEIN."**

52. Defendant **FARLEY,** advised Plaintiff that **Dr. STEIN** was the individual responsible for conduction, or causing to have conducted, the surgical implantation of the device, in Plaintiff.

53. While at the Field Office, Plaintiff was subjected to identification process (i.e. Finger printing, Photographs, etc...). While there Defendant **SOILES** stated "The implant in you, the devices capabilities are tracking and listening. We used the Massachusetts General Hospital Medical Doctors and Nurses and our own physician to do a clean implant while you were under General Anesthesia". Defendant **JOHN GAMMEL** agreed and said we knew where you were from Boston to Nevada to Arizona. State of the Art Device.

54. Upon the completion of identification process Plaintiff was transported to the Braintree Police Station (Braintree) for housing. Defendants: DEA Agents, **KELLY & PETERSON** Transported Plaintiff and also tried to convince plaintiff to consent to removal of Device.

55. While being taken from the Field Office to a vehicle for transportation to Braintree, one of the Principal Defendant's (possibly Defendant **CUNIFF**), informed Plaintiff that, "He (Plaintiff), was the only person with the device on the East Coast" and went on to mention another person implanted with the device on the "West Coast".

56. During the discussion stated in paragraph number fifty-five (55), above this Defendant further mentioned the source of "device" as the Central Intelligence Agency.

57. Plaintiff was subsequently transported to, and housed at the Braintree Station.

58. On or about the 16th day of December 1996, Plaintiff was taken to the Boston Massachusetts Federal Building and arraigned on Federal criminal Charges before U.S. Magistrate Judge **LAWRENCE COHEN**.

59. Plaintiff was transported from the Boston Federal Building, to the Wyatt detention facility in Central Falls, Rhode Island where he remained housed.

60. On the 6th day of January 1997, Plaintiff was brought before the Honorable Magistrate Judge **JUDGE ROBERT B. COLLINGS,** U.S. District Court Judge, for the purpose of a Bond Hearing.

61. During the Bond Hearing stated in paragraph number sixty (60) above; Defendant **FARLEY**, testified that he heard the conversation at Logan International Airport between Defendant Roberto, and the Plaintiff in which Defendant **ROBERTO**, informed Plaintiff about the Plaintiff being implanted with a "device" which monitored Plaintiff activities.

62. Defendant **FARLEY**, further testified that it was his belief that **ROBERTO**, was merely joking with the Plaintiff regarding the "device".

63. Upon adjournment of the January 6th Bond Hearing: Plaintiff was returned to the Central Falls Facility for housing.

64. On June 14, 1999, a hearing was conducted (without the presence of Plaintiff) at the Federal Court Building Worcester, Massachusetts before the Honorable **NATHANIEL M. GORTON**, U.S. District Court Judge, at which time Judge **GORTON**, ordered Assistant U.S. Attorney's **JEFFREY AUERHAHN,** and **CYNTHIA YOUNG**, to ascertain whether or not agent's discussed a device being implanted in Plaintiff, and whether such implantation did occur.

65. As a result of Judge **GORTON'S**, June 14th Court Order the record reflects that certain Defendant's did in fact advise Plaintiff that a device was implanted in him, however, these Defendants were allegedly joking and there was no implantation of such device in Plaintiff.

66. On the 25th day of May, 2000, the Honorable **JOSEPH TAURO**, United States District Judge, ordered the government to cause to be affected and M.R.I. on Plaintiff to conclusively ascertain the existence of any electronic device implanted in the Plaintiff.

67. Judge **TAURO's**, May 25th Judicial order stated in paragraphs number 66 above, has to this date not been effectuated.

68. Plaintiff was under Federal/State investigation and surveillance, and monitoring at the time of and prior to Plaintiff's admission at Massachusetts General Hospital for gunshot wound.

69. As a product of discovery process conducted in a malpractice lawsuit against Massachusetts general Hospital, et al. (Case No: 99–5655H), Plaintiff has procured conclusive medical evidence that there did exist a foreign "artifact" inside Plaintiff at time of x-rays conducted at Massachusetts General Hospital, as set forth in paragraph numbers 36 and 37 above. This device remains inside Plaintiff.

Docket No. 1 at 5–14.

The docket entries in *United States v. Vincent Portalla, a.k.a. Vincent Marino,* Criminal No. 97–10026 for the dates referred to in paragraphs 58, 60–62, and 66 of the complaint are reproduced in Attachment A. The docket entries in *United States v. Vincent Michael Marino, a.k.a. Gigi Portalla,* Criminal No. 97–40009 for the proceedings of June 14, 1999, referred to in paragraphs 64 and 65 of the complaint are also reproduced in Attachment A

### III. Interpretation of Pro–Se Pleadings

■ This court has a duty to construe pro se submissions with liberality, and does so in this case as in others. *See Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (per curiam); *Haines v. Kerner,* 404 U.S. 519, 520, 92

S.Ct. 594, 30 L.Ed.2d 652 (1972) (per curiam); *see also Lema v. United States*, 987 F.2d 48, 54 n. 5 (1st Cir.1993). For this reason, even though the complaint is unclear in relation to the precise nature of the claims being asserted, I treat the complaint as sufficient to give notice to the defendants and the court that the plaintiff is making *Bivens* claims against federal defendants, *see Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), and claims against state defendants remediable under 42 U.S.C. § 1983.

## IV. Verification of Pleadings

■■■■ The court's obligation to accept alleged facts as true for the purposes of rulings on a motion to dismiss is limited to well-pleaded facts. *Washington Legal Foundation*, 993 F.2d at 971. Whether facts are well-pleaded may depend on (1) the nature of those facts, (2) whether reasonably expectable sources of verification are identified and, when examined, do or do not verify the allegations, and (3) whether facts that are well-pleaded identify reasons to expect that records and witnesses who might verify allegations are accessible to a defendant but not to the plaintiff. *See, e.g., New England Data Servs., Inc. v. Becher*, 829 F.2d 286 (1st Cir.1987).

The facts alleged in the complaint in this case include allegations that multiple hearings were held before two magistrate judges and two district judges of this court during which rulings were made. The record now before the undersigned judge, however, does not include docket entries, reporter transcripts, or memoranda and orders that would either verify or show falsity of these allegations. Thus, on the record now before me, I cannot determine whether many of these alleged facts are well-pleaded facts.

For example, plaintiff asserts in paragraph 66 that Judge Tauro

ordered the government to cause to be affected and M.R.I. on Plaintiff to conclusively ascertain the existence of any electronic device implanted in the Plaintiff

on May 25, 2000. The record from plaintiff's criminal case, over which Judge Tauro presided, does reflect that the plaintiff appeared before Judge Tauro on that date, entered a guilty plea, and was sentenced. Docket Nos. 102, 103, 104, and 106 in Criminal No. 97–10026. Nothing in the record now before me suggests or refers to, even obliquely, any statements by anyone at the hearing regarding an M.R.I. Therefore, I cannot at this time determine that the allegations in paragraph 66 are not well-pleaded. Also, I cannot determine whether the rule of pleading explained in *Becher* does or does not apply.

## V. Defendants' Motions to Dismiss

The federal defendants in this case have filed two separate Motions to Dismiss (Docket Nos. 21 and 72). The later motion was filed on behalf of three defendants who were served after the first motion was filed. Because the memoranda supporting the motions make identical substantive arguments, I treat them together.

A chief contention of the federal defendants is that plaintiff filed this suit after his claims were barred under the applicable statute of limitation. The federal defendants also assert that the action against them is barred by the doctrine of sovereign immunity, that the complaint fails to state a claim against them because it is cast as a Section 1983 claim, and that the complaint should be dismissed as frivolous.

The Commonwealth of Massachusetts urges that the case against Lt. Thomas Quigley in his official capacity be dismissed because it is a claim for damages against

the state that is barred by the Commonwealth's immunity under the Eleventh Amendment and that, in any event, the complaint fails to state a claim on which relief may be granted.

### VI. More on the Claim Against the Federal Defendants

*A. Failure to State a Claim*

■ To the extent that the federal defendants seek dismissal because the complaint is cast as a claim under 42 U.S.C. § 1983, their request must be denied. As is noted above, pro se plaintiffs are not held to the same strict standards of pleading that parties who are represented by counsel are expected to meet. The court therefore treats the claims against the federal defendants as *Bivens* claims and will not dismiss this action merely because the complaint does not explicitly say that plaintiff is asserting *Bivens* claims.

*B. Frivolousness*

■ The federal defendants characterize plaintiff's allegations as "fantastic and delusional," and urge that the court dismiss the civil action for lack of jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure. The cases cited by the federal defendants, however, do not support the contention that a court has authority to make such an order without a showing of grounds for concluding that no reasonable adjudicator could credit enough of the allegations to determine that a genuine dispute of material fact exists.

*Bell v. Hood* and its progeny arguably support a dismissal of federal claims when those claims are patently frivolous as a matter of law. 327 U.S. 678, 683, 66 S.Ct. 773, 90 L.Ed. 939 (1946). In *Bell*, however, the Court did not determine whether the alleged facts were credible. Rather, noting that "if the allegations have any foundation in truth, the plaintiffs' legal rights have been ruthlessly violated," the

Court reversed the district court's dismissal. *Id.*

The case on which the federal defendants rely most stridently, *Neitzke v. Williams*, is wholly inapplicable on this issue. 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). In that case, the Court interpreted the term "frivolous" as it appears in 28 U.S.C. § 1915. That section, which has since been amended in ways that are not relevant here, allows a district court to dismiss a civil action in which the plaintiff is proceeding *in forma pauperis* whenever the court determines that the action is frivolous. The civil docket sheet for this civil action and the stamp placed on the Complaint by the office of the Clerk of this court both indicate that the plaintiff paid the $150.00 filing fee. Therefore, Section 1915 and *Neitzke* are inapplicable here.

*C. Sovereign Immunity of Federal Defendants Sued in their Official Capacities*

■ Actions brought against federal employees in their official capacities are actions against the United States. 28 U.S.C. § 2679; *Hawaii v. Gordon*, 373 U.S. 57, 83 S.Ct. 1052, 10 L.Ed.2d 191 (1963). Actions against the United States are allowed only in the limited situations where the United States has, by a specific statutory provision, waived its immunity. *Bivens* actions, therefore, which do not arise under any statute, may not be brought against the United States or its officials acting in their official capacity. *Instituo de Education v. Riley*, 209 F.3d 24, 28 (1st Cir.2000).

■ In limited circumstances, the United States has waived its immunity with respect to the intentional torts of federal law enforcement officials. *See* 28 U.S.C. § 2680. That waiver, however, requires that a claimant file a claim with the relevant federal agency within two years after the claim has occurred. 28 U.S.C. § 2401;

Roman v. Townsend, 224 F.3d 24, 27 (1st Cir.2000). Only after such a claim is denied may a claimant resort to a suit against the United States. 28 U.S.C. § 2675.

Plaintiff has not asserted that he filed a claim with the Drug Enforcement Agency, Federal Bureau of Investigations, Central Intelligence Agency, or any other federal entity. This failure precludes this court from accepting this civil action as a suit for damages against the United States and its officers in official capacities.

Of course, the immunity of the United States does not preclude this court from issuing an appropriate writ if one is required by the facts of the case and applicable law, and does not preclude the maintenance of a *Bivens* action against the federal officials in their individual capacities. *See Rivera v. Riley*, 209 F.3d 24, 28 (1st Cir.2000).

### D. Timeliness

■ Ordinarily a federal court looks to the most closely analogous state statute of limitation governing personal injury claims for guidance as to the period of limitation to be applied to *Bivens* claims and Section 1983 claims. *Wilson v. Garcia*, 471 U.S. 261, 276–80, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985) (Section 1983 claims); *Roman v. Townsend*, 224 F.3d 24, 29 (1st Cir.2000) (*Bivens* actions). Massachusetts has a three-year limitation period for personal injuries claims. Mass. Gen. Laws c. 260, § 2A.

■ Even when the period of limitation is determined by analogy to state law, the determination regarding the time of accrual of a cause of action is governed by federal law. *Nieves v. McSweeney*, 241 F.3d 46, 52 (1st Cir.2001). In this circuit, *Bivens* and Section 1983 claims accrue at the moment the plaintiff knows, or has reason to know, of the injury that is the basis for the claims. *Id.See also Brackett*

*v. United States*, 270 F.3d 60, 68 n. 4 (1st Cir.2001) ("in tort law under the discovery rule, the running of the statute of limitations does not begin until the fact of the injury becomes known, or should have become known in the exercise of due diligence"). Federal courts may adopt any state tolling rules that are not at odds with federal law. *Board of Regents v. Tomanio*, 446 U.S. 478, 483–486, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980).

■ The federal defendants assert that plaintiff's claim accrued on December 15, 1996, (more than two years before plaintiff initiated this civil action) when Defendant Roberto informed plaintiff that "a microchip tracking device" was implanted in plaintiff, and requested plaintiff's authorization for its removal. The court, however, cannot at the same time credit federal defendants' assertion that plaintiff's claim about the planting of a "microchip tracking device" is frivolous and credit federal defendants' assertion that at the time of that incident plaintiff knew or should have known "the fact of injury" to the plaintiff.

Plaintiff asserts that he is the victim of an on-going conspiracy and that the statute of limitation, therefore, has not yet run. Docket No. 50 at 33–35. In the alternative, plaintiff argues that the statute should be tolled because he is incarcerated in a federal penitentiary, has limited access to legal materials, and, at least during the pendency of his criminal case, was incarcerated in a facility that provided no access whatsoever to legal materials. *Id.* at 35–36. Finally, plaintiff argues that his cause of action did not accrue until November 24, 1999, when he reviewed an x-ray film report. *Id.* at 73.

Another issue arises from the fact that the federal defendants, under oath at the plaintiff's criminal trial, Docket No. 1 ¶ 62 & 65, repudiated the comments allegedly made on December 15, 1996. In these

circumstances, I cannot at this time determine whether plaintiff is or is not entitled to the benefit of a doctrine of equitable tolling that would stand in the way of dismissal of this civil action. *See Andrews v. Arkwright Mutual Ins. Co.,* 423 Mass. 1021, 1021, 673 N.E.2d 40, 41 (Mass.1996).

## VII. More on the Claims Against the State Defendant

The state defendant, Lt. Thomas Quigley, is sued in both his individual and official capacities. The Commonwealth of Massachusetts moved to dismiss the claims brought against Lt. Quigley in his official capacity only (Docket No. 18, filed June 12, 2001; Docket No. 77, filed November 7, 2001).

 The Commonwealth of Massachusetts is the real party in interest when a state police officer is sued for damages in his official capacity. *Hafer v. Melo,* 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). It is well-established that a state is not amenable to suit under 42 U.S.C. § 1983 because a state is not a "person" within the meaning of that statute. *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). For these reasons, the Order below DISMISSES the claims that seek monetary damages against the Commonwealth and against Lt. Quigley in his official capacity.

 Although injunctive relief may be available against state officials sued in their official capacities, *see, e.g., Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), plaintiff's complaint fails to state a viable claim for injunctive relief. The facts recited above, viewed in the light most favorable to the plaintiff do not establish that Lt. Quigley is engaged in a continuing violation of federal law. *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Injunctive relief, which is prospective in nature, is not available to remedy past violations. *Id.* For these reasons, the Order below DISMISSES claims for injunctive relief against Lt. Quigley in his official capacity.

## VIII. Plaintiff's Motions

*A. Plaintiff's Motions for Disclosure and Production of Newly Discovered Documents Pursuant to F.R.C.P. 26 and Rule 34 (Docket No. 53, filed December 3, 2001; Docket No. 56, filed December 6, 2001; and Docket No. 76, filed February 19, 2002)*

In Docket Numbers 53 and 56, which are identical in all respects, plaintiff seeks to place two documents into evidence. In Docket Number 76, plaintiff seeks to place various testimony and other exhibits into evidence. At the present time, no motion for summary judgment is before this court. Also, plaintiff has not identified any other pending matter as to which the testimony presented in Docket No. 76 would be appropriately received in evidence.

For these reasons, the Order below DENIES Docket Nos. 53, 56, and 76. This ruling is without prejudice to the later filing of an appropriate request in support of or in opposition to a motion for summary judgment or to the introduction of this evidence for a legitimate reason at trial or any other hearing.

*B. Plaintiff's Motion of Disclosure and Production of Newly Discovered Documents re: United States Patent Number: 5,629,678 of Human Implants of Tracking Devices and Other State of the Art Capabilities, All Being Disclosed Pursuant to Fed.R.Civ.P. Rule 26 and Rule 34 (Docket No. 61, filed January 7, 2002)*

 As the caption above indicates, in Docket Number 61, plaintiff seeks to place certain information related to various patents and inventions into evidence. This information is not relevant to any issue

now before this court. For this reason, the Order below DENIES Docket No. 61.

*C. Motions to Clarify Medical Term "Artifact" (Docket Nos. 57, filed December 20, 2001 and 62, filed January 10, 2002)*

In Docket Numbers 57 and 62, which are identical in all respects, plaintiff seeks to have the court clarify the term "artifact." Plaintiff asserts that this term appears on at least one of his medical records.

The definition of the term "artifact" in general is not decisive of any issue now before the court. The meaning of that term as it appears on plaintiff's medical record or records, however, may become important in relation to a motion for summary judgment, at a trial on the merits, or at an evidentiary hearing at which this evidence could be received for a legitimate purpose.

For these reasons, the Order below DENIES Docket Nos. 57 and 62.

*D. Motion to Offer Caselaw to Prohibit Defense Attorneys from Protection of Defendants who Continue to Conspire Together in Furtherance of Conspiracy and Conspiracy of Silence to Cover Up Discovery (Docket No. 59, filed January 7, 2002)*

The Order below DENIES Docket No. 59 as a Motion. The court treats this prose submission as a memorandum of law, however and has considered plaintiff's arguments of law presented in this document.

*E. Motion of Notice via sharing an Attorney [AUSA Anita Johnson] with Original Defendants and also via Identity of Interest with Originally Named Defendants (Docket No. 60, filed January 7, 2002)*

The Order below DISMISSES Docket No. 60 as moot in light of the Statement of Defendant Regarding Service on Individuals (Docket No. 67, filed January 10, 2002) and the Declaration of Assistant U.S. At-torney Regarding Service (Docket No. 68, filed January 10, 2002). The Declaration indicates that the two named defendants have now been served.

## IX. Remaining Issues

In the order below, the defendants are directed to file their answer or answers or other responsive pleadings no later than Monday, April 1, 2002.

Any party or attorney with knowledge of the x-ray and radiology report referred to in ¶ 37 of the complaint and who asserts or may assert a privilege with respect to those documents may file an application to file the documents under seal.

In the Order below, any party receiving notice of this Order and having custody of any documents, medical records, x-rays, or other evidence related to the claims asserted in this civil action is directed to preserve those items pending a further order of this court.

All parties are directed to file a proposed schedule for the efficient adjudication of this matter no later than April 15, 2002.

## ORDER

For the reasons explained above, it is ORDERED:

(1) Federal Defendants' Motions to Dismiss (Docket No. 21, filed July 10, 2001 and Docket No. 72, filed February 7, 2002) are ALLOWED to the extent that the complaint seeks damages from federal officials acting in their official capacity, and are otherwise DENIED;

(2) Thomas Quigley's Motion to Dismiss (Docket No. 77, filed November 7, 2001) is ALLOWED to the extent that it seeks a dismissal of the case against Lt. Quigley in his official capacity, and is otherwise DE-NIED;

(3) Plaintiff's Motions for Disclosure and Production of Newly Discovered Documents Pursuant to F.R.C.P. Rule 26 and Rule 34 (Docket No. 53, filed December 3, 2001 and Docket No. 56, filed December 6, 2001) are DENIED;

(4) Plaintiff's Motion of Newly Discovered Evidence Offered Pursuant to Fed. R.Civ.P. Rule 26 and Rule 34 (Docket No. 76, filed February 19, 2002) is DENIED;

(5) Plaintiff's Disclosure and Production of Newly Discovered Documents (Docket No. 61, filed January 7, 2002) is DENIED;

(6) Plaintiff's Motions to Clarify Medical Term Artifact (Docket No. 57, filed December 20, 2001 and Docket No. 62, filed January 10, 2002) are DENIED;

(7) Plaintiff's Motion to Offer Caselaw to Prohibit Defense Attorneys from Protection of Defendants who Continue to Conspire Together in Furtherance of Conspiracy and Conspiracy of Silence to Cover Up Discovery (Docket No. 59, filed January 7, 2002) is DENIED;

(8) Plaintiff's Notice via Sharing an Attorney with Original Defendants and Also via Identify of Interest with Originally Named Defendants (Docket No. 60, filed January 7, 2002) is DISMISSED as moot;

(9) Any party receiving notice of this Order and having custody of any documents, medical records, x-rays, or other evidence related to the claims asserted in this civil action is directed to preserve those items pending a further order of this court

(10) All defendants are directed to file their answer or answers or other responsive pleadings no later than Monday, April 1, 2002. All parties are directed to file a proposed schedule for the efficient adjudication of this matter no later than April 15, 2002.

## Attachment A

Reproduction of Docket Entries in *United States v. Vincent Portalla, a.k.a. Gigi, a.k.a. Vincent Marino,* Criminal No. 97–10026, for the dates identified in the Complaint in Civil Action No. 01–10116–REK

| Date | Docket # | Docket Entry |
|---|---|---|
| 12/16/96 | 3 | MOTION by USA as to Vincent Portalla, Charles McConnell to unseal the Complaint, supporting Affidavit, filed. [1:96–m –171](ktb) [Entry date 12/27/96] |
| 12/16/96 | — | Mag. Judge Lawrence P. Cohen. ENDORSED ORDER as to Vincent Portalla, Charles McConnell: granting [3–1] motion to unseal the Complaint, supporting Affidavit as to Vincent Portalla (1). [1:96–m–171](ktb) [Entry date 12/27/96] |
| 12/16/96 | — | Initial appearance as to Vincent Portalla, Charles McConnell held (Defendant informed of rights.). [1:96–m –171](ktb) [Entry date 12/27/96] |
| 12/16/96 | — | MOTION made in open court by USA as to Vincent Portalla, Charles McConnell, for detention, to continue. [1:96–m –171](ktb) [Entry date 12/27/96] |
| 12/16/96 | — | Mag. Judge Lawrence P. Cohen. ORAL ORDER as to Vincent Portalla, Charles McConnell granting [0–0] oral motion to continue as to Vincent Portalla (1), Charles McConnell (2). [1:96–m –171](ktb) [Entry date 12/27/96] |
| 12/16/96 | 4 | Mag. Judge Lawrence P. Cohen. CLERK'S NOTES as to Vincent Portalla re: Initial Appearance; set Detention Hearing for 2:00 p.m. on 12/18/96 for Vincent Portalla Court Reporter: TAPE [1:96–m –171](ktb) [Entry date 12/27/96] |

. . .

| Date | Docket # | Docket Entry |
|---|---|---|
| 01/06/97 | — | Preliminary Examination as to Vincent Portalla held. [1:96–m –171](jam) [Entry date 01/09/97] |
| 01/06/97 | 15 | Mag. Judge Robert B. Collings for Mag. Judge Cohen. CLERK'S NOTES as to Vincent Portalla, re: Preliminary Exam. and Evidentiary Hearing held. Probable cause found. Detention taken under advisement.; Court Reporter: Tape [1:96–m –171 ](jam) [Entry date 01/09/97] |
| 01/06/97 | 16 | NOTICE of Appearance of counsel for Vincent Portalla, by Attorney |

Robert L. Sheketoff. [1:96–m–171](jam) [Entry date 01/09/97]

| | | |
|---|---|---|
| 01/06/97 | 17 | Exhibit list by USA as to Vincent Portalla, filed. [1:96–m –171](jam) [Entry date 01/09/97] |

. . .

| | | |
|---|---|---|
| 05/25/00 | — | Change of Plea Hearing as to Vincent Portalla held. (cmg) [Entry date 06/01/00] |
| 05/25/00 | — | PLEA entered by Vincent Portalla. Court accepts plea. Guilty: Vincent Portalla (1) count(s) 4s (cmg) [Entry date 06/01/00] |
| 05/25/00 | 102 | Judge Joseph L. Tauro. CLERK'S NOTES as to Vincent Portalla, re: change of plea. Deft present w/counsel for change of plea. Court conducts plea colloquy. Deft enters plea of guilty to Count 4. Counts 1,2,3 and 5 to be dismissed by Govt upon sentencing. Govt's factual basis for plea. Court accepts plea. Disposition immediately to be concurrent w/D.J. Gorton sentence. P.S.R. is not completed. Court Reporter: Teri Gibson (cmg) [Entry date 06/01/00] |
| 05/25/00 | — | Sentencing held Vincent Portalla (1) count(s) 4s. (cmg) [Entry date 06/01/00] |
| 05/25/00 | 103 | Judge Joseph L. Tauro. CLERK'S NOTES as to Vincent Portalla, re: sentencing. AT request of deft and Govt's attorney, Court proceeds to sentencing phase. Joint recommendation of parties is adopted by the Court and imposed as follows: 10 years custody Atty. Gen. on Count 4 to be served currently w/CR 97–40009, 10.3 years Supervised Release. No Fine. $100 special assessment. Court recommends that deft serve his sentence as close to Massachusetts as possible. Court Reporter: Teri Gibson (cmg) [Entry date 06/01/00] |
| 05/25/00 | 104 | Plea Agreement as to Vincent Portalla, Marked as Exhibit I, FILED.(c/s)(cmg) [Entry date 06/01/00] |

Reproduction of Docket Entries in *United States v. Vincent Michael Marino*, Criminal No. 97–40009, for the dates identified in the Complaint in Civil Action No. 01–10116–REK

| Date | Docket # | Docket Entry |
|---|---|---|
| 06/14/99 | — | Status conference as to Robert F. Carrozza, Michael P. Romano Sr., Anthony Ciampi, John J. Patti III, Eugene A. Rida Jr., Vincent Michael Marino and Nazzaro Ralph Scarpa held. (jb) [Entry date 06/23/99] |
| 06/14/99 | 903 | Judge Nathaniel M. Gorton. CLERK'S NOTES as to Robert F. Carrozza, Michael P. Romano Sr., Anthony Ciampi, John J. Patti III, Eugene A. Rida Jr., Vincent Michael Marino, Nazzaro Ralph Scarpa, re: status conference; case called; counsel and defendant Carrozza pro-se appear for status conference. Hearing held on motions. Motion # 843, 861, 869 and 876 DENIED. Motions # 844, 858, 870 879 and 881 ALLOWED. Final status conference set for 9/8/99 at 3:30 pm. set final status conference for 3:30 pm on 9/8/99 for Robert F. Carrozza, for Michael P. Romano Sr., for Anthony Ciampi, for John J. III, for Eugene A. Rida Jr., for Vincent Michael Marino, Nazzaro Ralph Scarpa; Court Reporter: C. Dahlstrom. (jb) [Entry date 06/23/99] |