Silvio SOLIS–ALARCON,
et al., Plaintiffs

v.

UNITED STATES of America,
et al., Defendants.

Civil No. 05–1987(SEC).

United States District Court,
D. Puerto Rico.

May 17, 2006.

Luis A. Melendez–Albizu, Luis A. Melendez Albizu Law Office, San Juan, PR, for Plaintiffs.

Fidel A. Sevillano–Del–Rio, United States Attorney's Office, San Juan, PR, for Defendants.

## OPINION AND ORDER

CASELLAS, District Judge.

Before the Court is Defendants United States of America's, U.S. Department of Justice's ("DOJ"), Drug Enforcement Agency's ("DEA"), Special Agent Felton Cameron's, and Special Agent Greg Calam's (hereinafter collectively referred to as the "Federal Defendants") motion to dismiss (Dockets ## 17–18). After multiple extensions of time, Plaintiffs opposed said motion (Docket # 38)[1] and the Federal Defendants replied (Docket # 41). After carefully considering the parties filings and the applicable law, for the reasons set forth herein, Federal Defendants' motion to dismiss will be **DENIED in part, GRANTED in part.**

### Factual Background

This complaint is the second one Plaintiffs file based on the same facts. Previously, on September 20, 2004, Plaintiffs filed a similar complaint, later amended.[2]

---

1. We now grant Plaintiffs' last request for extension of time (docket # 35) to file the opposition, though, as noted below at n. 3, Plaintiffs are advised that in the future the Court expects them to comply promptly with any pending deadline.

2. The factual allegations in that complaint were identical to those in the present complaint. However, that complaint was directed against a greater number of defendants than the current complaint. Plaintiffs later amended that complaint (*see* Civ. No. 04–1977(PG), Docket # 2). Although they preserved the factual allegations, they edited the list of defendants. In the instant complaint, Plaintiffs have once again expanded the list of defendants and, along with that, the number

That complaint was dismissed without prejudice on June 13, 2005 for Plaintiffs' failure to serve within the time limit provided for in Fed.R.Civ.P. 4(m) (*see,* Civ.04–1977(PG), Dockets ## 6–7).

On September 16, 2005, Plaintiffs filed the instant complaint. They now allege that on September 18, 2003, at 5:00 a.m., Special Agents Cameron and Felton, along with other unnamed defendants searched their home and belongings without authorization; searched and detained, but not arrested, Plaintiffs Silvio Solís Alarcón and Migdalia Márquez; and confiscated Plaintiffs' Dodge Durango as it had allegedly been used in a drug transaction (Docket # 1 ¶¶ 13–18). Plaintiffs' car was later returned to its registered owner, the Banco Bilbao Vizcaya Argentaria (*Id.* at ¶ 19). Per the allegations in the complaint, at the time Defendants carried out the search they told Plaintiffs that they were looking for a man named Juan Díaz, who Plaintiffs stated they did not know (*Id.* at ¶ 17).

Resting on these facts, Plaintiffs filed their complaint and asserted four causes of action: (1) against Special Agents Felton Cameron and Greg Calam for *Bivens* violations; (2) against the DEA, the DOJ, and the United States for violations of the Federal Torts Claims Act ("FTCA"); (3) against unnamed state police defendants under Section 1983; and (4) against those same unnamed defendants under Articles 1802 and 1803 of the Puerto Rico Civil Code, 31 P.R. Laws Ann. §§ 5141–5142 (*see, Id.* at ¶¶ 25–33). As a remedy for these violations, Plaintiffs requested $1,000,000.00 for each Plaintiff for his or her emotional pain and suffering, $5,000,000.00 in punitive damages, costs, interests, and attorney's fees (*Id.* at ¶¶ 34–37).

Federal Defendants have moved to dismiss the complaint for lack of subject matter jurisdiction, lack of jurisdiction over the person, insufficiency of service of process, and failure to state a claim upon which relief can be granted (see Fed.R.Civ.P. 12(b)(1), (2), (4) & (6)).

**Standard of Review**

*Fed.R.Civ.P. 12(b)(1)*

■ Fed.R.Civ.P. 12(b)(1) is the proper vehicle for challenging a court's subject matter jurisdiction. *Valentín v. Hospital Bella Vista,* 254 F.3d 358, 362–63 (1st Cir. 2001). Under this rule a wide variety of challenges to the Court's subject matter jurisdiction may be asserted, among them those based on sovereign immunity, ripeness, mootness, and the existence of a federal question. *Id., U.S. v. Lahey Clinic Hosp., Inc.,* 399 F.3d 1, 8, n. 6 (1st Cir. 2005). *See also, Hernández–Santiago v. Ecolab, Inc.,* 397 F.3d 30, 33 (1st Cir.2005) (discussing application of Rule 12(b)(1) challenge in cases where the court allegedly has diversity jurisdiction). With Rule 12(b)(1) motions based on considerations of sovereign immunity, as with Rule 12(b)(6) motions, the Court should construe the complaint liberally and treat all well-pleaded facts as true, according the benefit of all reasonable inferences to plaintiff. *See, Murphy v. U.S.,* 45 F.3d 520, 522 (1st Cir.1995).

*Fed.R.Civ.P. 12(b)(2) & 12(b)(4)*

■ A party who seeks to have an action dismissed for lack of personal jurisdiction should assert that defense via Fed.R.Civ.P. 12(b)(2). *See, Uffner v. La Reunion Francaise, S.A.,* 244 F.3d 38, 40–41 (1st cir.2001). Failure to set forth such a

of claims asserted. Thus, Plaintiffs now for the first time bring the United States and the Drug Enforcement Agency as defendants and

claim that they are liable under the Federal Torts Claims Act. See, Docket # 1.

defense in a timely manner results in its waiver. *Id.;* Fed.R.Civ.P. 12(g), 12(h). Similarly, where a party has available a defense of insufficiency of process, that too must be timely asserted, lest it be deemed waived. *Williams v. Jones,* 11 F.3d 247, 251 n. 4 (1st Cir.1993); Fed.R.Civ.P. 12(g) and 12(h).

*Fed.R.Civ.P. 12(b)(6)*

■ Under Rule 12(b)(6), in assessing whether dismissal for failure to state a claim is appropriate, "the trial court, must accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences therefrom in the plaintiff's favor, and determine whether the complaint, so read, limns facts sufficient to justify recovery on any cognizable theory." *LaChapelle v. Berkshire Life Ins. Co.,* 142 F.3d 507, 508 (1st Cir.1998) (citations omitted). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), *quoted in Davis v. Monroe County Bd. of Ed.,* 526 U.S. 629, 119 S.Ct. 1661, 1676, 143 L.Ed.2d 839 (1999). *See also Correa–Martínez v. Arrillaga–Beléndez,* 903 F.2d 49, 52 (1st Cir. 1990) (dismissal for failure to state a claim is warranted "only if it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory").

■■ But "[a]lthough this standard is diaphanous, it is not a virtual mirage." *Berner v. Delahanty,* 129 F.3d 20, 25 (1st Cir.1997) (citing *Gooley v. Mobil Oil Corp.,* 851 F.2d 513, 515 (1st Cir.1988)). In order to survive a motion to dismiss, "a complaint must set forth 'factual allegations, either direct or inferential, respecting each material element necessary to sustain re-

covery under some actionable legal theory.' " *Id.* In judging the sufficiency of a complaint, courts must "differentiate between well-pleaded facts, on the one hand, and 'bald assertions, unsupportable conclusions, periphrastic circumlocution, and the like,' on the other hand; the former must be credited, but the latter can safely be ignored." *LaChapelle,* 142 F.3d at 508 (quoting *Aulson v. Blanchard,* 83 F.3d 1, 3 (1st Cir.1996)). *See also Rogan v. Menino,* 175 F.3d 75, 77 (1st Cir.1999). Courts, moreover, "will not accept a complainant's unsupported conclusions or interpretations of law." *Wash. Legal Found. v. Mass. Bar Found.,* 993 F.2d 962, 971 (1st Cir. 1993). "[I]t is enough for a plaintiff to sketch an actionable claim by means of a generalized statement of facts from which the defendant will be able to frame a responsive pleading." *Langadinos v. American Airlines, Inc.,* 199 F.3d 68, 73 (1st Cir.2000) *(quoting Garita Hotel Ltd. Partnership v. Ponce Fed. Bank,* 958 F.2d 15, 17 (1st Cir.1992) (internal quotation marks omitted)). In so doing, "a plaintiff can make allegations *either* on the basis of personal knowledge or on 'information and belief.' " *Id.*

**Applicable Law and Analysis**

Since the motion to dismiss was filed by Federal Defendants, the Court need only concern itself with the claims asserted against them. As stated above, Plaintiffs averred that Co-defendants Calam and Cameron should be held liable under *Bivens v. Six Unknown Fed. Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), for having violated Plaintiffs' constitutional rights under the Fourth and Fifth Amendments of the U.S. Constitution. They also asserted claims against the United States for torts recognized by Puerto Rico law and cognizable

against the U.S. Government as per the FTCA.

Federal Defendants assert that the complaint against them should be dismissed because, since the statute of limitations ran out, the Court lacks subject matter jurisdiction; deficiencies in the service of process warrant dismissal and render the Court without jurisdiction over the Federal Defendants; Federal Defendants are entitled to qualified immunity; and, as to several claims and defendants, the complaint fails to state a claim upon which relief can be granted. We address each argument in turn.

## A. ARGUMENTS FOR DISMISSAL OF THE BIVENS CLAIM

### I. The statute of limitations

Federal Defendants' first contention is that the Court lacks subject matter jurisdiction over Plaintiffs' Bivens claim because it is time barred (Docket # 18, p. 4). To that end, the Federal Defendants posit: (1) that the applicable statute of limitations is one year, (2) that more than one year has passed since the facts that give rise to the instant complaint and the filing of said complaint, and (3) that the filing and later dismissal without prejudice of a complaint (referring to Civ. No. 04–1977) does not toll the statute of limitations. They cite abundant case law purportedly in support of their contention that the complaint is time-barred. Our reading of that and other applicable case law, coupled with the facts alleged in the complaint, leads us to the contrary conclusion.

■ First, a brief clarification is in order: although Federal Defendants' assertion that the Bivens claim is time-barred, if true, would warrant dismissal of such a claim, it does not implicate the Court's subject matter jurisdiction. In the words of the First Circuit: "the statute of limita-

tions as to a Bivens action against individual officers is simply an affirmative defense and does not affect a court's subject matter jurisdiction". *Vega Encarnación v. Babilonia,* 344 F.3d 37, 42 (1st Cir.2003) (citing *Roberts v. College of the Desert,* 870 F.2d 1411, 1414 (9th Cir.1988) and *Paetz v. United States,* 795 F.2d 1533, 1536 (11th Cir.1986)). *See also, López–González v. Municipality of Comerío,* 404 F.3d 548, 551 (1st Cir.2005) (reviewing under Fed. R.Civ.P. 12(b)(6) a district court's grant of dismissal based on statute of limitations grounds); cf., *Leavell v. Kieffer,* 189 F.3d 492, 494–495 (7th Cir.1999) (when the complaint shows that a Bivens claim is time-barred, disposition of that claim should be sought under Fed.R.Civ.P. 12(c) and not 12(b)(1) nor 12(b)(6)).

■■ We now turn to the merits of the argument: whether Plaintiffs' Bivens claim is time-barred. In Bivens actions, as in Section 1983 claims, the statute of limitations is borrowed from the applicable state statute of limitations for personal injuries, which in Puerto Rico is one year. *See,* P.R. Laws Ann. § 5298; *Centro Médico del Turabo, Inc. v. Feliciano de Melecio,* 406 F.3d 1, 6 (1st Cir.2005) (stating that a federal court adjudicating a Section 1983 claim must borrow the forum state's general statute of limitations for personal injury actions, in Puerto Rico's case, one year) (citations omitted); *Rossiter v. Potter,* 357 F.3d 26, 34 n. 7 (1st Cir.2004) (commenting that "courts generally have applied state statute of limitations to Bivens actions notwithstanding the fact that such actions lie only against federal officers") (citations omitted); *Roman v. Townsend,* 224 F.3d 24, 29 (1st Cir.2000) (Bivens claim brought in the District of Puerto Rico is subject to one year statute of limitations period); *Molina–Acosta v. Martínez,* 392 F.Supp.2d 210, 218 (D.P.R. 2005) ("[t]he statute of limitations on a

Bivens claim in Puerto Rico is one year") (citations omitted). That one year period begins to run the day after the date of accrual. *Centro Médico del Turabo,* 406 F.3d at p. 6; *Carreras–Rosa v. Alves–Cruz,* 127 F.3d 172 (1st Cir.1997) (holding that Puerto Rico law controls the question of when the statute of limitations begins to run, and under that law, the period must be counted from the day after the date of accrual) (citations omitted). The date of accrual, in turn, is determined in accordance with federal law; that date is generally when the plaintiff knows or has reason to know of the injury on which the action is based. *Centro Médico del Turabo,* supra (stating the rule with regards to Section 1983 claims) (citations omitted); *Leavell v. Kieffer,* 189 F.3d at 495 ("under federal law, the time [to bring a Bivens claim] begins to run when the plaintiff knows he has been injured").

■ Here, Plaintiffs knew of their alleged injury the same day that they suffered it: on September 18, 2003. That is the date of accrual, pursuant to federal law. Per the Puerto Rico law discussed above, the statute of limitations began running the next day, on September 19, 2003; the day after the date of accrual. The period to sue lasted 366 days (2004 was a leap year, *see, Carreras–Rosa v. Alves–Cruz,* 127 F.3d at 174) and thus ended on September 18, 2004. Since that day was a Saturday, it is excluded and the limitations period must be extended until the next Monday, September 20, 2004 (*see, Id.* at 174–175). It follows that Plaintiffs' first complaint, Civil No. 04–1977(PG), filed on September 20, 2004, was timely.

Nonetheless, Federal Defendants posit that the current complaint (Civil No. 05–1987(SEC)) is time-barred because it was filed more than one year after the events that gave rise to the complaint. Anticipating the logical response to such an argument, Federal Defendants further contend that the filing of Civil No. 04–1977(PG) did not toll the statute of limitations and, therefore, once that complaint was dismissed without prejudice, the statute of limitations did **not** begin to run anew.

■ In order to correctly address that contention, we must first decide what tolling rules, if any, apply. In a Bivens claim, as the statute of limitations is borrowed from the one applicable to analogous state actions, generally so too are the tolling provisions. *See, Roman,* 224 F.3d at 29 (analyzing tolling of the statute of limitations of Bivens claim under Puerto Rico's provision regarding extrajudicial claims) (citations omitted), *Pitts v. U.S.,* 109 F.3d 832, 834–835 (1st Cir.1997) (same) (citations omitted). Such tolling provisions could be found inapplicable, however, if they were inconsistent with federal law or the underlying principles of the asserted federal cause of action. *See, Nieves–Vega v. Ortiz–Quiñones,* 443 F.3d 134, 136–37 (1st Cir.2006) (stating, with regards to Section 1983 claims, that "[w]hen a § 1983 action is brought in Puerto Rico, federal law borrows from Puerto Rico tolling law so long as it is consistent with underlying federal policy") (citations omitted). Here, there is no reason to depart from that general rule. Federal Defendants have not brought to the Court's attention any circumstance which would warrant the conclusion that application of Puerto Rico's tolling provisions would offend federal law or the principles underlying a Bivens claim. Cf. *López–González,* 404 F.3d 548 (holding that complaint was time-barred and tolling would not be consistent with federal principles where more than a year had elapsed since the events giving rise to the complaint and a previous timely filed complaint was dismissed without prejudice **as a result of Plaintiff's disobedience of the Court's orders**) (emphasis added).

Thus, we turn to Puerto Rico's tolling rules to decide whether the filing of Civil No. 04–1977 tolled the statute of limitations and allowed it to run anew once it was dismissed without prejudice.

■ Art. 1873 of the Puerto Rico Civil Code, 31 P.R. Laws Ann. § 5303 states that "[p]rescription of actions is interrupted by their institution before the courts, by extrajudicial claim of the creditor, and by any act of acknowledgment of the debt by the debtor". In order for a prior judicial action to toll the statute of limitations as to a later filed complaint, it is necessary that the second complaint assert a cause of action identical to the one asserted in the first action. *Rodríguez–García v. Municipality of Caguas,* 354 F.3d 91, 97 (1st Cir.2004) (citations omitted). That, in turn, means that "[t]he causes of action asserted must be based on the same substantive claims" and "they must be asserted against the same defendants in the same capacities". *Id.* at 98. The filing of a complaint results in the statute of limitations running anew from the time that action comes to a definite end. *Id.* at 97.

■ In the instant complaint, Plaintiffs seek relief for their deprivation of Fourth Amendment and Fifth Amendment rights (to be free from unreasonable searches and seizures, and deprivations of property and liberty without due process). Docket # 1 ¶¶ 26–27. They assert these causes of action against Co-defendants Calam and Cameron. *Id.* The exact same relief, claim, and defendants were named in both the Complaint and the Amended Complaint in Civil No. 04–1977(PG) (see Dockets ## 1 ¶¶ 23–24 and 2 ¶¶ 20–21). Therefore, the current complaint and its predecessor are identical as far as the Bivens claim is concerned, the only one Federal Defendants have argued is time-barred. Accordingly, Civil No. 04– 1977(PG) tolled the statute of limitations to file the Bivens claim.

We recap briefly: Plaintiffs filed a complaint within a year of the events that gave rise to their Bivens claim; that complaint was later dismissed without prejudice; within a year of that dismissal, Plaintiffs filed the instant complaint, which asserts an identical Bivens claim. Since, as discussed above, the applicable statute of limitations is of one year and it begins running the day after the date of accrual, the filing of a judicial action tolls said statute of limitation as long as the first and second complaints assert the same cause of action, and that statute of limitation has a fresh start from the moment the prior judicial action comes to a definite end, it follows that Plaintiffs' current complaint, Civil No. 05–1987(SEC) is not time-barred. Therefore, Federal Defendants' Motion to Dismiss on that ground is **DENIED.**

## II. Service of Process and Personal Jurisdiction over Federal Defendants

Federal Defendants' next argument is that Co-defendants Calam and Cameron have not been properly served, as required by Fed.R.Civ.P. 4(e) and 4(i)(2)(B), and therefore the Court lacks jurisdiction over said Co-defendants. Plaintiffs, naturally, disagree.

Fed.R.Civ.P. 4(1)(2)(B) requires anyone suing an officer or employee of the United States "in an individual capacity for acts or omissions occurring in connection with the performance of duties on behalf of the United States" to serve both the United States and the individual officer. Service upon the first should be done pursuant to Fed.R.Civ.P. 4(i), which in its relevant part requires that service be effected by: (1) delivering copy of the summons and of the complaint to the United States Attorney for the district in which the action is

brought (or provide said copies to the U.S. District Attorney in one of the alternate ways set forth in subdivision (A) of the rule), and (2) by sending a copy of the summons and of the complaint by registered or certified mail to the Attorney General of the United States. Service upon the individual officer, on the other hand, may be done pursuant to Fed. R.Civ.P. 4(e), which allows for service upon an individual within a judicial district of the United States to be effected pursuant to the law of the state in which the district court is located.

 As is evident from the rules mentioned above, service of process pursuant to Fed.R.Civ.P. 4(i) entails service to multiple persons and in different ways, therefore failure to serve properly under that rule may take many forms. Despite that, Federal Defendants have not pinpointed at which step of the service of process Plaintiffs allegedly failed. Nonetheless, after reviewing the motion to dismiss (Docket # 18), the opposition (Docket # 38), and the reply (Docket # 41), the Court assumes that the defect to which Federal Defendants alluded when they sought dismissal of the Bivens claim on the grounds of insufficient service of process was Plaintiffs' failure to send copies of the summons and the complaint to the Attorney General of the United States, as prescribed by

Fed.R.Civ.P. 4(i). However, it appears from the opposition and its exhibits that the Attorney General, though belatedly, has been sent copies of the summons and the complaint via certified mail.[3] Therefore, at this point, service pursuant to Fed. R.Civ.P. 4(i) appears to have been perfected. Federal Defendants' failure to address this issue in their reply, after Plaintiffs had submitted proof of service with their opposition, further supports this conclusion. Moreover, the Court notes that even if Plaintiffs had not perfected service in accordance with Fed.R.Civ.P. 4(i), in this district there is authority that supports the proposition that service in a Bivens claim against federal officials in their personal capacity need only comply with Fed.R.Civ.P. 4(e). *See, Dodson v. Reno,* 958 F.Supp. 49, 55 (D.P.R.1997) (emphasis in original). *See also, Pagán v. Pesquera,* 1999 WL 544682, *1 (D.P.R.1999).

Accordingly, Federal Defendants' motion to dismiss the Bivens claim for lack of personal jurisdiction over Co-defendants Calam and Cameron is **DENIED.**

### III. Qualified Immunity

 Qualified immunity shields officials performing discretionary functions from civil liability for money damages when their conduct does not violate "clearly established" statutory authority or con-

---

**3.** The Court notes that Plaintiffs have, so far, displayed an alarming lack of timeliness in prosecuting this case. Their first lawsuit was dismissed for not serving process within the requisite time and, in this case, they requested a total of eight (8) extensions of time to oppose Federal Defendants' motion; many of them were filed after the previous extension of time had expired. Thus the opposition to a motion filed on January 26, 2006 was not filed until March 29, 2006. At that time, Plaintiffs' last extension of time had expired some eight days before.

The Court notes, and strongly disapproves of the possibility, that at least some of those

extensions of time may have been requested in order to perfect service pursuant to Fed. R.Civ.P. 4(i) after the term for serving process had expired and despite having no good cause for the delay. Moreover, although the Court was lenient with Plaintiffs on this occasion, from now on Plaintiffs are expected to strictly comply with the time frames provided for by the Federal Rules of Civil Procedure, the Local Rules, and this Court's orders. Plaintiffs are forewarned that in the future failure to comply with Court imposed deadlines will result in sanctions that could include the dismissal **with prejudice** of this action.

stitutional rights of which a reasonable person would have known. *Roldan–Plumey v. Cerezo–Suárez,* 115 F.3d 58, 65 (1st Cir.1997) (quoting from *NereidaGonzález v. Tirado–Delgado,* 990 F.2d 701, 704 (1st Cir.1993)). "The shield provided by the qualified immunity doctrine is an immunity from suit rather than a mere defense to liability." *Santana v. Calderón,* 342 F.3d 18, 23 (1st Cir.2003) (citations omitted).

▬▬ In order to assess whether a defendant is entitled to qualified immunity, the First Circuit evaluates such claims under a three part test. *Torres Rivera v. Calderón,* 412 F.3d 205, 214 (1st Cir.2005). The first part of the test is asking whether the facts alleged show that the officer's conduct violated a constitutional right. *Id.* (citing *Riverdale Mills Corp. v. Pimpare,* 392 F.3d 55, 60–61 (1st Cir.2004)). If the answer to that question is in the affirmative, the Court goes on to the next prong: whether at the time of the alleged violation the right in question was clearly established so that a reasonable officer would be on notice that his conduct was unlawful. *See, Id.* at 214 (quoting *Riverdale Mills Corp., supra).* If the answer to that question is also in the affirmative, the Court must still ask one final question to determine if the officer is entitled to qualified immunity: whether a reasonable officer, similarly situated, would understand that the challenged conduct violated the clearly established right at issue. *Id.* Only upon a finding that the defendant fails on all three prongs of the test is qualified immunity denied.

Here Federal Defendants allege in their Motion to Dismiss that: (1) Co-defendants Calam and Cameron had observed one Juan Díaz–Suavo in a drug transaction; (2) at that time Díaz–Suavo was driving a 2001 Dodge Durango with a license plate EBK–373; (3) the vehicle was registered in Co-plaintiff Silvio Solís–Alarcón's name; (4)

Co-defendants obtained a warrant for Díaz–Suavo's arrest and proceeded to execute it at Co-plaintiff Solís–Alarcón's address; (5) they thus entered Plaintiffs' residence and searched it for Díaz Suavo, however, they were unable to find him; and (7) they seized the Dodge Durango because it had been used in an illegal drug transaction. Federal Defendants add that their return of the car was the result of DEA regulations regarding the purchaser's ownership interest. Having recited their allegations regarding the facts, Federal Defendants then set forth the qualified immunity standard and, without more, conclude that they are entitled to qualified immunity because Plaintiffs' complaint points to no facts or authority that show that the officers' actions violated a clearly established constitutional right and that a reasonable officer would have known such actions to be unlawful.

Plaintiffs' opposition to the qualified immunity defense rests in part on the argument that since it was asserted on a motion to dismiss, the Court cannot consider facts extraneous to the complaint, such as those alleged by Federal Defendants on their motion to dismiss (i.e., that they had a warrant for the arrest of Juan Díaz–Suavo, that they returned the seized Dodge Durango because, according to DEA regulations, they had to do so since the purchaser's ownership interest was below $5,000.00). Having emphasized the relevant standard of review, Plaintiffs then argue that the facts alleged in the complaint are sufficient to state the violation of a constitutional right, clearly established at the time the facts took place, and that no reasonable officer would have believed that the challenged conduct was lawful.

▬▬ Indeed, when a defendant's quest for the protection that qualified immunity affords is brought to the Court's attention via a Rule 12(b)(6) motion to

dismiss, the qualified immunity analysis must be based on the facts stated in the complaint. *Vélez–Díaz v. Vega–Irizarry*, 421 F.3d 71, 78 (1st Cir.2005) (citing *Riverdale Mills Corp. v. Pimpare*, 392 F.3d 55, 61 (1st Cir.2004)). Per the allegations in the complaint: At 5:00 a.m. on September 18, 2003, Co-defendants Cameron and Calam, along with some police officers, banged on the door at Plaintiffs' home, awaking them, and, then detained Plaintiffs and searched their home "without any authorization". Plaintiffs further allege in the complaint that Co-defendants Calam and Cameron asked Plaintiffs about Juan Díaz and, after Plaintiffs replied that they did not know him, continued searching the house. Finally, Plaintiffs aver in the complaint that Co-defendants Calam and Cameron confiscated their Dodge Durango.

 As the Court reads those allegations, consistent with the Plaintiff-friendly standard that is requisite at this stage of the proceedings, Plaintiffs have averred that their home was searched and they were detained, both without a warrant. Thus, Plaintiffs have alleged that Co-defendants Calam and Cameron deprived them of their constitutional right to be free from unreasonable searches and seizures. Generally, the Fourth Amendment prohibits a warrantless search of a home. *See, e.g., Johnson v. U.S.*, 333 U.S. 10, 14 (1948), *Illinois v. Rodríguez*, 497 U.S. 177, 181, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990), *U.S. v. Meada*, 408 F.3d 14,20 (1st Cir.2005), *U.S. v. Samboy*, 433 F.3d 154, 158 (1st Cir.2005). There are, of course, exceptions to the rule, but at this juncture they do not appear to be implicated in this case.[4] Furthermore, the existence of an arrest warrant for one person, i.e. Juan Díaz Suavo, does not entitle law enforcement officials to search the home of a third party in their quest for the would be arrestee. *Steagald v. US*, 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981), *see also, Joyce v. Town of Tewksbury*, 112 F.3d 19, 21–22 (1st Cir.1997). In order to enter and search the third party's home, the police must obtain a search warrant, consent, or exigent circumstances must be present. *Steagald*, 451 U.S. at 216, 101 S.Ct. 1642.

Thus, Plaintiffs have sufficiently pleaded that Co-defendants Cameron's and Calam's actions deprived them of their constitutional right to be free from unreasonable searches and seizure. Moreover, at the time that the facts giving rise to the complaint took place, Plaintiffs' right to be free from a search of their home without a warrant, their consent, or exigent circumstances present, was clearly established. So too was their right to be free of a search of their home pursuant to an arrest warrant for a third party. The former proposition constitutes longstanding interpretation of what the Fourth Amendment allows, in terms of searches. The latter has been firmly established since the 1980's. As for the third prong of the qualified immunity analysis, at this stage of the proceedings, we must conclude that a reasonable officer would have known that it was unlawful both to conduct a warrantless search of a home when no consent had been obtained and where no exigent circumstances were present and to search a home in furtherance of the execution of an arrest warrant for a third party.[5]

---

**4.** Except where consent has been obtained or exigent circumstances are present, "the entry into a home to 4 conduct a search or make an arrest is unreasonable under the Fourth Amendment unless done pursuant to a warrant." *Steagald v. U.S.*, 451 U.S. 204, 211,

101 S.Ct. 1642, 1647, 68 L.Ed.2d 38 (1981). *See also, Meada, supra, Samboy, supra.*

**5.** Federal Defendants aver that the seizure of the Dodge Durango was lawful. However, their assertion of entitlement to qualified im-

A note of caution is in order. The current disposition of the qualified immunity defense does not foreclose Federal Defendants, if warranted, from renewing their request for qualified immunity at the summary judgment stage, with factual support for their contentions. Accordingly, Federal Defendants' request for dismissal of the Bivens claim based on qualified immunity is **DENIED**.

## IV. DEA and the United States as Defendants

 Federal Defendants argue that the Bivens claim cannot be asserted against either the DEA or the United States, since such actions lie only against the responsible officers. Plaintiffs respond that they did not assert their Bivens claim against the U.S. government or its agencies. Accordingly, this issue would be moot. However, it appears from the caption of the complaint that the DOJ and the DEA have been brought as defendants, apart from the U.S. Government and the individual Federal Defendants. Since neither agency would be a proper defendant under either *Bivens* or the FTCA, *see, F.D.I.C. v. Meyer,* 510 U.S. 471, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994), dismissal as to these Co-defendants is warranted. Accordingly, since they are not proper defendants, the claims against the DEA and the DOJ are **DISMISSED WITH PREJUDICE**.

## V. Negligent Investigation

Federal Defendants' final argument for dismissal of the Bivens claim is that if Plaintiffs pretend to assert that the constitutional violation occurred as a result of an alleged negligence in the officers' investigation, such a claim would not rise to a violation of the Due Process Clause and thus Co-defendants Cameron and Calam would be entitled to qualified immunity. However, it does not appear that the constitutional violations for which Plaintiffs seek redress via a Bivens claim are premised on a negligent investigation by law enforcement officers. If, on the summary judgment stage, such a theory materializes as part of Plaintiffs' case, Federal Defendants may then move for its dismissal.

We recap briefly as to the Bivens claim: Federal Defendants' Motion to Dismiss said claim is **DENIED**. However, if warranted, Federal Defendants may retake their arguments regarding qualified immunity and negligent investigation via a properly supported motion for summary judgment.

## B. ARGUMENTS FOR DISMISSAL OF THE TORT CLAIM

### I. Seizure of the Dodge Durango

 Pursuant to the FTCA, the United States may be held liable for claims for money damages for loss of property, personal injury, or death "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C.A. § 1346(b)(1). This constitutes a waiver of

---

munity referred solely to the search of Plaintiffs' home and the detention of Plaintiffs while that search was ongoing. The Court is thus unable to ascertain whether Federal Defendants wish to streamline the *Bivens* claim by asserting qualified immunity as to Plaintiffs' allegations regarding the seizure of the

car. Because Federal Defendants did not argue the application of qualified immunity to the seizure of the Durango, we do not include it in our analysis of qualified immunity. Defendants may, of course, properly address this issue on summary judgment.

the United States' sovereign immunity; absent a waiver such as this one, courts have no jurisdiction over claims against the federal government. *See, Rakes v. U.S.,* 442 F.3d 7, 18 (1st Cir.2006). This waiver, however is subject to exceptions, "which 'define the limits of federal subject matter jurisdiction in this area.' " *Montijo–Reyes v. U.S.,* 436 F.3d 19, 24 (1st Cir. 2006) (quoting from *Hydrogen Tech. Corp. v. U.S.,* 831 F.2d 1155, 1161 (1st Cir.1987)).

28 U.S.C.A. § 2680(c), in relevant part, provides an exception to the United States' waiver of sovereign immunity found in the Federal Tort Claims Act as to "[a]ny claim arising in respect of the assessment or collection of any tax or customs duty, or the detention of any goods, merchandise, or other property by any officer of customs or excise or any other law enforcement officer [ . . . ]". The parties disagree over whether this subsection may be applied to the actions of Federal Defendants in seizing the Dodge Durango. Specifically, they hold opposing views as to the contours of the phrase "any other law enforcement officer". Federal Defendants contend that they are covered by the exception, inasmuch as it refers to claims arising out of the detention of property by, among others, "any other law enforcement officer". Plaintiffs respond that they may not seek refuge in that exception since the phrase should be interpreted to mean any other law enforcement officer working in a customs or tax-related capacity. Both contentions find some support in the case law; the Supreme Court has yet to resolve the issue, *see, Kosak v. U.S.,* 465 U.S. 848,

853 n. 6, 104 S.Ct. 1519, 79 L.Ed.2d 860 (1984), there are no First Circuit decisions on this point,[6] and there is a split among the circuits that have been faced with the issue.

Four Circuits, the Fourth, Sixth, Seventh, and District of Columbia Circuits, have championed the view espoused here by Plaintiffs: that § 2680(c)'s reference to "any other law enforcement officer" should be limited, by the terms of the section taken as a whole, to any other law enforcement officer, other than customs officers, working in the enforcement of tax or customs laws. *See, Kurinsky v. U.S.,* 33 F.3d 594 (6th Cir.1994), *Bazuaye v. U.S.,* 83 F.3d 482 (D.C.Cir.1996), *Ortloff v. U.S.,* 335 F.3d 652 (7th Cir.2003), *Andrews v. U.S.,* 441 F.3d 220 (4th Cir.2006). In reaching their decisions, these Circuit Courts of Appeals have concentrated on principles of statutory construction and Congress's purpose when it enacted the FTCA as it relates to the customs and tax assessment exception. Specifically, these courts have noted that if the *ejusdem generis* canon is applied, the general phrase "any other law enforcement officer" must be defined so as to only include items of the type that preceded it in § 2680's recitation. *Andrews,* 441 F.3d at 223–24. Therefore, the term "any other law enforcement officer" would encompass other law enforcement officers performing functions similar to those carried out by excise or customs officers. *Id.* The application of the *noscitur a sociis* canon would yield the same result, since it requires that the

---

**6.** Nonetheless, two district courts within the First Circuit have dealt with the possible interpretations of § 2680(c). One of them stands for the proposition that § 2680(c) does not bar recovery in an FTCA claim where the law enforcement officers were acting outside the excise/customs context. *Hydrogen Tech. Corp. v. U.S.,* 656 F.Supp. 1126, 1127–28 (D.Mass.1987) (citing *Formula One Motors,*

*Ltd. v. U.S.,* 777 F.2d 822, 825 (2d Cir.1985) (Oakes, J. concurring)). The other, from this district, emphasizes the "any other law enforcement officer" language in § 2680(c) prior to holding that said section bars FTCA claim against FBI agents arising out of the warrantless search and seizure of several cars in plaintiff's dealership. *Cardona Del Toro v. U.S.,* 791 F.Supp. 43, 47 (D.P.R.1992).

meaning of an undefined phrase be determined by the words immediately surrounding it. *Id.* at 224–25 (citing Black's Law Dictionary 1087) (8th Ed.2004). Moreover, as these decisions discuss, such an interpretation is consistent with the purpose of the FTCA and its exceptions. *See, Bazuaye,* 83 F.3d at 484–85 (§ 2680 exceptions were carved out, at least in part, to exclude from the waiver of immunity those claims for which an adequate remedy was already available, and at common law a plaintiff could recover from customs officers for negligently damaging goods he detained or from excise officers for improper seizure of his money or property).

Taking a different route, a majority of the other circuits that have addressed the issue—the Fifth, Eighth, Ninth, Tenth, Eleventh, and the Federal Circuit—have interpreted the phrase "any other law enforcement officer" expansively. *See, Chapa v. U.S. Dep't of Justice,* 339 F.3d 388 (5th Cir.2003) (§ 2680(c) precludes claim for loss of inmate's property, which he had given to Bureau of Prisons officers to be returned to him once he had transferred from one prison facility to another); *Cheney v. U.S.,* 972 F.2d 247 (8th Cir.1992) (finding plaintiff's claim against federal drug task agent who seized a car title certificate and later returned it to plaintiff's girlfriend, who obtained the car and in whose possession it was damaged, covered by § 2680(c) and therefore not cognizable under the FTCA); *Bramwell v. U.S. Bureau of Prisons,* 348 F.3d 804 (9th Cir. 2003) (applying § 2680(c) to inmate's claim regarding damage to his prescription eyeglasses as a result of Bureau of Prison officers' seizure of inmate's coat); *Hatten v. White,* 275 F.3d 1208 (10th Cir.2002) (applying § 2680(c) to claim by inmate whose property had been mailed outside

the prison facility); *Schlaebitz v. U.S. Dep't of Justice,* 924 F.2d 193 (11th Cir. 1991) (§ 2680(c) covers claim against U.S. Marshals, who in the course of an arrest at an airport, confiscated arrestee's luggage and released it to a third party); *Ysasi v. Rivkind,* 856 F.2d 1520 (Fed.Cir.1988) (holding that Eleventh Circuit would find § 2680(c) barred FTCA suit against immigration officers for seizure of truck).

Many of these decisions have brief, if any, explanation for their holding. *See Cheney, supra,* (characterizing exception as broad), *Hatten, supra, Schlaebitz, supra,* (stating that it was persuaded by the decisions of the other circuits), *Ysasi, supra,* (stating that it was persuaded by the decisions of other circuits and adding that nothing in the legislative history of § 2680(c) was incompatible with the interpretation of the statute by those courts). Perhaps the fullest explanation for construing § 2680(c) as including law enforcement officers other than those acting in an excise or customs capacity can be found in *Chapa, supra.* There the Fifth Circuit reasoned that such interpretation comported with another of the exceptions found in § 2680, namely subsection (h), in which law enforcement officers are defined as "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law". *Chapa,* 339 F.3d at p. 390 (quoting from 28 U.S.C.A. § 2680(h)). However, addressing that line of reasoning, the Fourth Circuit noted that it would be erroneous to use § 2680(h)'s definition of law enforcement officer to ascertain the limits of the phrase "any other law enforcement officer" in § 2680(c) because § 2680(h) explicitly provides the definition for the purpose of that subsection only.[7] *Andrews,* 441 F.3d at 226.

---

**7.** § 2680(h) reads in part: *"For the purpose of this subsection,* 'investigative or law enforcement officer' means any officer of the United States who is empowered by law to execute

After reviewing the applicable law, this Court is persuaded by the reasoning of the Fourth, Sixth, Seventh, and District of Columbia circuits. Accordingly, the language "any other law enforcement officer" in § 12680(c) refers to any other law enforcement officer working in an excise or customs capacity. Since the seizure of the Dodge Durango in this case was done by DEA agents not working in such capacity, any claim arising thereof is not exempted by virtue of § 2680(c). Therefore, dismissal of the FTCA claim as regards the Dodge Durango is **DENIED.**

## II. Failure to plead as to the search of Plaintiffs' residence and persons

Federal Defendants' next argument for dismissal of the FTCA claim, at least with regards to the search of Plaintiffs' house and their accompanying detention and search of their persons, treads more familiar ground. In essence, Federal Defendants contend that Plaintiffs' complaint does not plead any particular tort, such as false arrest or malicious prosecution, and that even if construed as a more general negligence tort, Plaintiffs failed to plead the necessary elements of said action. The Court disagrees.

Plaintiffs' complaint is enough to state a claim under Puerto Rico's tort law, applicable here pursuant to 28 U.S.C.A. § 2674. Although lacking in particular labels (e.g., false arrest, etc.), Plaintiffs have set forth sufficient facts to survive a motion to dismiss. For example, Plaintiffs have averred that Defendants searched their house and detained them "without any authorization" and that they confiscated their vehicle without having "a valid reason" for so doing. (Docket # 1 ¶¶ 16,

19). They also allege that Federal Defendants' conduct throughout the intervention was negligent. *Id.* at ¶ 29, and that Defendants'. actions caused Plaintiffs "grave emotional damages, shame, and loss of reputation." *Id.* at ¶ 2 1. This sufficiently addresses, at the pleading stage, the elements of an Article 1802, 31 P.R. Laws Ann. § 5131. As to Federal Defendants' contention that claims arising out of violations of the Federal Constitution are not cognizable under the FTCA, *see, F.D.I.C. v. Meyer,* 510 U.S. 471, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994), we merely note that Puerto Rico law allows the filing of tort claims for violations of the rights protected by its Constitution, such as the right to privacy. *See, Robles Vázquez v. García,* 110 F.3d 204, 208 (1st Cir.1997).

Thus, we reject Federal Defendants' argument that Plaintiffs' pleading is insufficient. Consequently, the motion to dismiss, on this respect, is **DENIED.**

## III. Authorization for Search and Detention

Federal Defendants posit that the search of Plaintiff's home was authorized because they had a warrant for Díaz–Suavo's arrest and reason to believe that Díaz–Suavo lived at Plaintiffs' residence. They use that contention to propel their next argument: that since the search was authorized, so too was the detention of Plaintiffs while the search was being conducted. However, as discussed above, a warrant for the arrest of Juan Díaz–Suavo did not, in and of itself, give Defendants the right to search Plaintiffs' home without a warrant. *See, Steagald,* 451 U.S. at 204, 101 S.Ct. 1642. Neither *Muehler v. Mena,* 544 U.S. 93, 125 S.Ct. 1465, 161 L.Ed.2d

searches, to seize evidence, or to make arrests for violations of Federal law." (Emphasis added)

299 (2005), nor *Michigan v. Summers*, 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981) change that.[8] Furthermore, as to Federal Defendants' contention that they had reason to believe that Díaz–Suavo lived at Plaintiffs' house, at this stage, the Court cannot take it as true. There is no averment in the complaint regarding Federal Defendants' beliefs about Díaz–Suavo's relationship to Plaintiffs' home, and the applicable standard requires that we turn to the allegations in the complaint, and not the allegations in a motion to dismiss, to decide whether dismissal pursuant to Rule 12(b)(6) is warranted. Consequently, the motion to dismiss on this ground is **DENIED.**

### IV. Discretionary Function Exception to FTCA

Federal Defendants' final attempt to have the complaint dismissed rests on the FTCA's discretionary function exception. Per that exception, the FTCA's waiver of sovereign immunity does not apply to:

> Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused. 28 U.S.C.A. § 2680(a).

■ Federal Defendants assert that this exception applies, inasmuch as the decisions of how, when, and where to execute an arrest warrant are the type of discretionary decision that § 2680(h) protects. However, Plaintiffs here have asserted claims arising out Defendants' illegal search of their home, detention of Plaintiffs, and seizure of their car. Since Federal Defendants' actions, as alleged by Plaintiffs, were subject to Fourth Amendment limitations, they cannot be deemed discretionary. *See, Rich v. U.S.,* 158 F.Supp.2d 619, 629 (D.Md.2001).

### Conclusion

For the reasons set forth above, the motion to dismiss as to the *Bivens* claim against Co-defendants Cameron and Ca-

---

**8.** Both *Muehler* and *Summers* deal with detentions of a home's occupants while a search of the home, pursuant to a valid search warrant, was being conducted. Regarding the detention of the home's occupant without an arrest warrant while the search was ongoing, the Supreme Court in *Summers* stated:

> Of prime importance in assessing the intrusion is the fact that the police had obtained a warrant to search respondent's house for contraband. A neutral and detached magistrate had found probable cause to believe that the law was being violated in the house and had authorized a substantial invasion of the privacy of the persons who resided there. The detention of one of the residents while the premises were searched, although admittedly a significant restraint on his liberty, was surely less intrusive than the search itself. *Id.* at 701, 101 S.Ct. 2587.

The Court later added

> We have already noted that the detention represents only an incremental intrusion on personal liberty when the search of a home has been authorized by a valid warrant. The existence of a search warrant, however, also provides an objective justification for the detention. A judicial officer has determined that the police have probable cause to believe that someone in the home is committing a crime. Thus a neutral magistrate rather than an officer in the field has made the critical determination that the police would be given a special authorization to thrust themselves into the privacy of a home. The connection of an occupant to that home gives the police officer an easily identifiable and certain basis for determining that suspicion of criminal activity justifies a detention of that occupant. *Id.* at 703–04, 101 S.Ct. 2587.

lam is **DENIED.** The motion to dismiss as pertains to the FTCA claim against the United States is similarly **DENIED.** However, the motion to dismiss is **GRANTED** with regards to the DOJ and the DEA, which are not proper defendants under either claim. Accordingly, the claims against these agencies will be **DISMISSED WITH PREJUDICE.** Partial Judgment will be issued accordingly.

**SO ORDERED.**